UNITED STATES of America ex rel.
Curtis HOUSTON,
Plaintiff–Appellant,

v.

WARDEN, STATEVILLE CORRECTION-
AL CENTER, and Illinois Prisoner Re-
view Board, Defendants–Appellees.

No. 80–1208.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1980.

Decided Dec. 16, 1980.

Rehearing and Rehearing En Banc
Denied Feb. 11, 1981.

M. Anita Donath, Asst. Atty. Gen., Chica-
go, Ill., for defendants--appellees.

John Thomas Moran, Jr., Chicago, Ill., for
plaintiff ·appellant.

Before FAIRCHILD, Chief Judge, SWY-
GERT and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

Petitioner · appellant Curtis Houston ap-
peals from the district court's denial of his
*habeas corpus* petition. Houston argues
that he was not afforded due process at a
prison disciplinary hearing which resulted
in his loss of six months' good–time credit.
We affirm the judgment of the district
court.

Houston was incarcerated at Pontiac Cor-
rectional Center on a two -year determinate
sentence. He was entitled to be released
from custody upon serving the full two—
year term less credit for good behavior.
Ill.Rev.Stat. ch. 38, § 1003–3–5(e). From
the time that his incarceration began, Hous-

ton knew that he would be released April 19, 1979 unless he engaged in behavior which would forfeit earned good–time credit.

On October 17, 1978, Houston received an "Institutional Disciplinary Report" which charged that on August 23 of that year Houston had interfered with a food cart, attempted to upset it, and attempted to steal food from the cart. A disciplinary hearing was held on these charges October 19, at which the report was introduced into evidence and Houston appeared in his own defense. Although Houston did not dispute the charge that he had stopped the food cart, he claimed to have done so to get the attention of a correctional officer in order to request medicines to prevent epileptic seizures. Houston alleged that he regularly needed such medicine, but had been denied it since the major prison disturbance a month before the incident involved here. The disciplinary committee found Houston guilty of disobeying an order and of committing a mutinous act; it recommended that he be assigned to segregation for a year, demoted to "C" grade for one year (barred from earning any further good time credit for that period), and deprived of one year of earned good time. This recommendation was approved by the Department of Corrections Administrative Review Board and the Prisoner Review Board, although the latter board reduced the loss of good time to six months.

■ Petitioner claims that a prisoner serving a determinate sentence must receive greater due process safeguards before being deprived of good time than those afforded to a prisoner serving an indeterminate sentence. Houston claims that he should have been allowed to cross–examine the correctional officer who wrote the disciplinary report; further, petitioner argues that he should have been afforded the right to counsel. The United States Supreme Court ruled in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that a prisoner with an indeterminate sentence did not have the right to confront witnesses against him or to be represented by counsel in a disciplinary hearing before good time credits could be revoked. *Id.* at 567–70, 94 S.Ct. at 2980–81. We must examine the differences between determinate and indeterminate sentences to determine whether the district court properly applied the *Wolff* due process requirements to the case before us.

A prisoner with a determinate sentence must be released at the end of the sentence, less credit for good time earned. No paroling authority is available to release the prisoner at any earlier time. Release cannot be later than the end of the term and earning the maximum possible amount of good time sets a specific earliest possible release date.

On the contrary, the situation of a prisoner with an indeterminate sentence differs. As an example, we may consider a prisoner sentenced to a 3–6 year term. This prisoner knows that the term cannot be more than six years, less credit for good time earned. A paroling authority may decide to release the prisoner at any time between the minimum of three years less good–time earned and the maximum term. Ill.Rev. Stat. ch. 38, § 1003–3–3. Depriving this prisoner of good time credit does not certainly deprive him/her of release because the paroling authority can decide to release the prisoner at any time between the minimum and maximum terms (less applicable good–time credits). Although it is true that the indeterminately–sentenced prisoner who actually serves the maximum sentence is in a position similar to the prisoner with a determinate sentence, in fact few indeterminately–sentenced prisoners serve the maximum term. Although their situations do differ, this does not compel us to accord them different due process protections.

A prisoner already granted a specific parole date subject to continued good behavior in the prison until that date is in a position similar to the prisoner with a determinate sentence and an expectation of being released on a specific date determined by the length of the sentence less expected good–time credit. In both of these instanc-

es, the prisoner knows a specific date of release subject to continued good behavior in the prison until that date. This court has already ruled that the *Wolff* due process requirements are all that are required for the prisoner in the parole rescission situation, where a grant of parole is reversed because of the discovery before the set date of release of improper institutional conduct by or adverse information about the prisoner. *Christopher v. United States Board of Parole*, 589 F.2d 924 (7th Cir. 1978).[1] In *Christopher*, release on the set date was " 'conditioned upon the continued good conduct by the prisoner and the completion of a satisfactory plan for parole supervision,' " and upon the absence of " 'new information adverse to the prisoner regarding matters other than institutional misconduct.' " *Id.* at 927–78 (citations omitted). In the present case, Houston's release on the date of completion of the full sentence less anticipated good time was similarly conditional.

As in *Christopher*, the district court here properly applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), to determine how much process was due to the petitioner:

> In determining what process is due the Court has generally considered three factors: first, the private interest affected; second, the risk of an erroneous deprivation of such interest; and finally, the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18] (1976). The problem with petitioner's argument is that he focuses solely on the first of these three factors. We agree that the deprivation suffered by a prisoner serving a determinate sentence who loses good time is more concrete and more certain and therefore perhaps more serious than the loss felt by a prisoner whose release date is more uncertain. We note that neither deprivation is absolute since good time may be restored, *see* Ill.Rev.Stat., ch. 38,

§ 1003–6–3–(C)(3); *Wolff, supra* at 561 [94 S.Ct. at 2977]. More significantly, neither the prisoner serving a determinate sentence or the one serving an indeterminate sentence is deprived of a liberty he already has. For both the loss of good time means postponing a conditional liberty which they desire. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, [442] U.S. [1], 99 S.Ct. 2100, 2105 [60 L.Ed.2d 668] (1979). The other two factors which must be weighed are identical in both situations; the possibility of erroneous fact finding will not increase because the prisoner has a definite release date. However, it was the third factor which the Court deemed most significant in *Wolff*. The interest of prison officials in maintaining prison security and minimizing confrontations between the guards and prisoners was "the major consideration militating against adopting the full range of procedures suggested by *Morrissey*." *Wolff, supra* at 561 [94 S.Ct. at 2977]. Balancing those same three factors here, we find that the procedures outlined by the Court in *Wolff* represent the due process minimal requirements in petitioner's case.

*United States, ex rel. Curtis Houston v. Warden, Stateville Correctional Center*, No. 79–C–1576 (N.D.Ill., Sept. 12, 1979).

▮ Having determined that *Wolff* defines the process due to Houston, we must determine whether the process he received comports with the *Wolff* guidelines. We adopt as our own the portion of Judge Marshall's decision dealing with this issue:

> Petitioner alleges that defendants failed to comply with the statutory requirement that written notice of disciplinary violations be filed within 72 hours of its occurrence and that the disciplinary proceedings be commenced within 8 days. Ill.Rev.Stat., ch. 38, § 1003–8–7. Petitioner had not alleged that he suffered any harm from this delay and he does not

1. Petitioner relies heavily on *Drayton v. McCall*, 584 F.2d 1208, 1218–19 (2d Cir. 1978), which required more due process safeguards in a parole "rescission" case than the minimal

*Wolff* requirements. However, *Christopher* is the law of this circuit and we see no reason to alter the *Christopher* holding.

dispute respondents' statement that no disciplinary hearings were held from July 22, 1978 until October 16, 1978. This breach of the Illinois statute does not rise to constitutional proportions. Although at some point a delay in informing petitioner of the charges against him might interfere with his right to marshal the facts and prepare his defense, *see Wolff, supra* at 564 [94 S.Ct. at 2978] this two-month delay, which was suffered by all the residents of Pontiac did not deprive petitioner of due process of law.

Petitioner's contention that petitioner's conduct was not a "major offense" within the meaning of Administrative Regulation 804 is simply not cognizable on a writ of habeas corpus. We have neither the expertise nor the authority to substitute our judgment for that of the prison officials regarding the danger which certain behavior could create to the security of the prison.

In petitioner's response to the motion to dismiss he suggests one other aspect of the disciplinary procedure which he contends violated the *Wolff v. McDonnell* requirements. He argues that the Institutional Adjustment Committee failed to give an adequate statement of the evidence they relied on in violation of *Wolff* and their summary was merely a rehash of the disciplinary ticket and therefore the committee followed the practice condemned in *Hayes v. Walker*, 555 F.2d 625, 633 (7th Cir.), *cert. denied*, 434 U.S. 959 [98 S.Ct. 491, 54 L.Ed.2d 320] (1977). The considerations underlying the requirement of a written statement by the fact finders as to evidence relied upon are protecting the prisoner from collateral consequences of a disciplinary action and encouraging fair administrative decision-making. *Id.* at 631. *See also Wolff, supra* at 565 [94 S.Ct. at 2979]. The report in *Hayes* simply stated that:

> "Based on our review of the violation report and the report of the special investigation it is our motion that we find Mr. Hayes guilty as charged. We find that Mr. Hayes is guilty of conspiracy to incite to riot and commit mutinous acts."

555 F.2d at 631 n. 1. The court found that this report failed to point out "the essential facts upon which inferences were based" and that the "general finding would not ensure that prison officials would act fairly or protect the inmate against subsequent collateral consequences." In petitioner's case the committee specifically found that petitioner attempted to steal food off the cart, that he stopped the food cart and attempted to overturn it and that thereby he caused a general disturbance. These specific findings are sufficient to meet the requirement of a written statement by the fact finders.

Memorandum opinion at 8–10.

Accordingly, the Clerk of this Court is ordered to enter judgment affirming the judgment of the district court denying the *habeas corpus* petition.