Sanford Norman HARRIS, Plaintiff,

v.

Neal D. MacDONALD, et al., Defendants.

No. 81 C 2373.

United States District Court, N. D. Illinois, E. D.

Jan. 14, 1982.

Robert M. Hodge, Chicago, Ill., for plaintiff.

John J. Curry, Jr., Asst. Atty. Gen. of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Sanford Norman Harris ("Harris") is a prisoner at Stateville Correctional Center ("Stateville") who sues a number of state officials based on incidents surrounding Harris' February 1981 transfer from Sheridan Correctional Center ("Sheridan") to Stateville. Harris' claims sound in both 42 U.S.C. § 1983 ("Section 1983") and habeas corpus (28 U.S.C. § 2254) and employ a three-step analysis:

(1) Harris was disciplined at Sheridan and then transferred to Stateville in violation of numerous regulations of the Illinois Department of Corrections (the "Department").

(2) Those regulations create justifiable expectations on the part of prison inmates, establishing a "liberty" interest under the Due Process Clause. *See Meachum v. Fano*, 427 U.S. 215, 226 [96 S.Ct. 2532, 2539, 49 L.Ed.2d 451] (1976); *Shango v. Jurich*, 521 F.Supp. 1196, 1202 (N.D.Ill.1981).

(3) Because the state-created procedures were not followed in Harris' case, the treatment afforded him by defendants amounts to a deprivation of that liberty interest.

Defendants move to dismiss chiefly on the ground that Harris has not stated a cause of action against them either individually or collectively. For the reasons stated in this memorandum opinion and order, defendants' motion is granted in part and denied in part as to Count I of Harris' First Amended Complaint (the "Complaint"), granted as to Count II and denied as to Count III.

*Facts*[1]

On October 17, 1980 defendant William Hiser ("Hiser") was the head of Sheridan's Internal Affairs unit. Hiser summoned Harris to Hiser's office for questioning by an Illinois Department of Law Enforcement ("IDLE") investigator as to Harris' alleged delivery of illegal drugs to another inmate. Harris denied the allegations and also declined the IDLE agent's request to submit to a polygraph test. Harris was not presented with a *Miranda*-rights waiver form at the investigation, nor was he otherwise informed of such rights.

On December 9, 1980 the prison officials served a disciplinary "ticket" upon Harris charging him with violations of several sections of Administrative Regulation ("A.R.") 804. Those charges related to the same alleged delivery of drugs.

Next day the Sheridan Adjustment Committee (the "Committee") called Harris to consider the charges against him. On his motion it granted a 20-day continuance to December 30. On the continued hearing date Harris attempted to make both oral and written presentations of his defense to the Committee but was prevented from doing so.[2] Committee member Partak told Harris the inmate to whom Harris had assertedly delivered the drugs had taken two polygraph tests. Two other inmates also testified at the hearing, one of whom (inmate Wembley) executed two affidavits that same day claiming he had offered testimony that Harris was not guilty.

After the hearing the Committee found Harris guilty of four sections of A.R. 804. Three of the violations involved drug use, possession or delivery, while the fourth was for "[d]isobeying . . . any prison rule." A.R. 804.II.A.1(1). Harris was penalized with 30 days' segregation, the loss of 30 days' good time, demotion to "C" grade (from which grade Harris could not earn good time) for 90 days and transfer from Sheridan (less than a maximum security prison) to Stateville (a maximum security prison).

Harris pursued internal grievances in accordance with A.R. 845, but no action was immediately forthcoming. Harris served 35 days in segregation rather than the scheduled 30 and was released from segregation February 3, 1981. On February 8 the prison officials transferred Harris to Stateville. Sheridan's Inquiry Board rejected Harris' grievance February 27.

On May 13, though, the Department's Director informed Harris that the December 9 disciplinary ticket was being "expunged" from his record because prison records showed Harris had not been given 24 hours to prepare his defense, as guaranteed by A.R. 804.II.G.2. Harris' good time and "A" grade status were therefore restored to him and he received state pay for time spent in segregation. Harris however remains at Stateville.

### Count I

Prison disciplinary proceedings involving assignment to segregation and the loss of statutory good-time credit implicate the deprivation of "liberty" in Fourteenth Amendment terms. *Wolff v. McDonnell,* 418 U.S. 539, 556–58, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Accordingly a prisoner is constitutionally guaranteed certain procedural protections, including advance written notice of the charges and a written statement of the factfinders as to the evidence relied upon and the reasons for disciplinary action. *Id.* at 563–66, 94 S.Ct. at 2978–79; *Chavis v. Rowe,* 643 F.2d 1281, 1286–87 (7th Cir. 1981); *Hayes v. Walker,* 555 F.2d 625, 631–33 (7th Cir. 1977). *See also Chavis,* 643 F.2d at 1285–86 (disclosure of exculpatory evidence must be made to the inmate). Because the Committee's proceedings indeed resulted in loss of statutory

---

1. These "facts" are derived from the Complaint's allegations, taken as true on defendants' motion. No actual findings of fact are intended.

2. All members of the Committee are named as defendants: Lois Partak ("Partak"), Eugene Hapke ("Hapke") and Curtis Cattrell ("Cattrell"). Harris also sues Wardens Neal MacDonald ("MacDonald") of Sheridan and Richard DeRobertis ("DeRobertis") of Stateville.

good time and in segregation, those proceedings had to comport with due process under *Wolff.*[3]

■■■ What process was due Harris? Certainly compliance with the A.R.s' procedures would have satisfied the Due Process Clause. *Meachum,* 427 U.S. at 226–29, 96 S.Ct. at 2539–40. Count I however asserts substantial noncompliance:

(1) In violation of A.R. 804.II.G.1, the December 9 disciplinary ticket was issued more than 72 hours after the chargeable offense was discovered.

(2) In violation of A.R. 17, no *Miranda* warnings were given to Harris during his October 17 interview.

(3) In violation of A.R. 804.II.G.2, Harris was not served with the disciplinary ticket more than 24 hours before the initial December 10 Committee hearing.

(4) In violation of A.R. 804.II.G.7, the Committee refused Harris permission to present evidence and call witnesses.

(5) Though no A.R. is identified in this respect, the Committee ignored the exculpatory Wembley testimony.

(6) In violation of A.R. 17, the Committee relied on the results of polygraph tests administered by IDLE investigators to two witnesses.

(7) Again without reference to an A.R., Harris was retained in segregation past his outdate.

(8) In violation of A.R. 819, Harris was transferred to Stateville without a pretransfer hearing.

Not all those deficiencies create valid federal claims.[4] Surely the Committee was free to credit or not to credit Wembley's testimony. There can be no "justifiable expectation" on Harris' part as to the weight to be given such testimony, and thus no deprivation of a liberty interest.[5]

■■■ In a like vein, not every violation of administrative procedure in connection with major discipline automatically equates with a due process violation. It does not matter whether that conclusion follows from the premise that minor procedural rules do not confer a liberty interest on the prisoner, or the premise that the process taken as a whole—albeit technically faulty—comports with due process. *See United States ex rel. Houston v. Warden, Stateville Correctional Center,* 635 F.2d 656, 658–59 (7th Cir. 1980) (the latter view).

■■■ Under either locution, it is plain that not all of the regulation-violative claims reach constitutional stature. *Id.* at 659.

---

**3.** Later expungement of the charge from Harris' disciplinary record does not render moot any nonconformity of the December 30 hearing—and the consequent penalties imposed upon Harris—with due process requirements. Harris' assertion of a Section 1983 damage claim survives the state's later administrative actions erasing some of the penalties. Similarly, Harris' right to damages flowing from excessive segregation is not foreclosed by the state's payment for that period (it is unclear whether such pay was provided only for the 30-day period or for the extra five days as well). *See Chavis v. Rowe,* 643 F.2d 1281, 1287–88 (7th Cir. 1981). Harris' claim as to transfer does not involve *Wolff* directly, and the fact of transfer does not of itself violate due process and bring Section 1983 into play. *Meachum; Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). But given A.R. 819's established hearing procedure as to inter-institutional transfers, the state must provide such a hearing or run afoul of the Due Process Clause, *Shango,* 521 F.Supp. at 1202, or the Equal Protection Clause, *Stringer v. Rowe,* 616 F.2d 993, 997–98 (7th Cir. 1980).

**4.** Harris also claims that he was injured by the transfer to Stateville through being deprived of wages as an upholsterer at Sheridan. Portions of the parties' briefs appear to treat that as one of Harris' substantive contentions under Count I. This Court instead reads the claim as stating an element of *damage* from the alleged substantive deprivations (such as transfer to Stateville). If it were otherwise, the claim must fail. Harris has no independent property or liberty interest in a particular prison job, *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir. 1980), nor does any Department regulation confer any expectation of a pre-deprivation hearing upon him.

**5.** This holding would not apply if Harris' claim were that he had not been *apprised* of Wembley's favorable testimony (the Complaint is really not clear on that subject). In that event *Chavis,* 643 F.2d at 1285–86, holds a due process violation under *Brady v. Maryland* principles.

For precisely the reason stated in *Houston,* Harris' first three contentions fail here:

(1) Harris claims no harm or prejudice from the over 72-hour delay from discovery of the offense to issuance of the December 9 ticket.

(2) No Harris statement was used against him, so that the absence of *Miranda* warnings was of no moment.

(3) Absence of a 24-hour notice of hearing was rendered harmless by the 20-day continuance granted December 10.

Finally the Committee's use of polygraph evidence does not, as Harris claims, impinge upon A.R. 17. That A.R. is simply silent on that score.

█  Three Count I allegations survive (it must be remembered that a motion to dismiss is not the occasion, as defendants have urged, to decide whether the facts conform to the allegations):

(1) A.R. 804.II.G.7 and 9 are breached by the refusal to permit a defense (the Complaint says, "Plaintiff attempted to make oral and written presentations in his defense, but was cut off by defendant PARTAK")—in derogation of a truly fundamental procedural right.[6]

(2) Segregation may not be imposed as a disciplinary measure without a hearing before the Committee (see A.R.804.-II.D.1). *Wolff v. McDonnell* so holds. As to the excessive segregation time—even a "mere" five days—no hearing was accorded Harris.

(3) A.R. 819 promises a wholly separate hearing as to transfers. None took place. Due process is thus involved here as well. *Shango,* 521 F.Supp. at 1203.

As severely limited by the foregoing discussion (and subject to the possible inclusion of the Wembley-related claim), Count I withstands defendants' motion to dismiss.[7]

### Count II

Count II states as its gravamen defendants' violations of the Department's A.R.s. To the extent constitutional violations are involved, it adds nothing to Count I. To the extent they are not, Harris has adduced no authority supporting such a cause of action. Count II is therefore dismissed.

### Count III

█  In his final claim Harris seeks retransfer from Stateville to Sheridan under federal habeas corpus. Defendants respond by invoking *Holland v. Ciccone,* 386 F.2d 825, 827 (8th Cir. 1967). But that case is clearly inapposite, for it involved a denial of habeas where no federal claim was stated, *id.* at 826. Here the due process right to compliance with applicable state administrative regulations, not present in *Holland,* insures the prima facie vitality of federal issues.

Count III poses a different issue: Should federal habeas be available where a prisoner claims, not that *any* state detention is contrary to the Constitution, but only that he is being held in the *wrong* prison? So characterized, the claim relates to the *conditions* of the prisoner's confinement rather than his *custody* under state law.

On that score the Advisory Committee on the Rules Governing Cases Under 28 U.S.C. § 2254 states (Note to Rule 1):

It is ... the view of the Advisory Committee that claims of improper conditions of custody or confinement (not related to the propriety of the custody itself), can better be handled by other means such as 42 U.S.C. § 1983 and other related statutes.

---

6. This is not to be construed as a holding that the Committee was precluded from establishing reasonable procedures, and boundaries for the evidence produced, at the hearing. A.R.804.-II.G.9. At this point we deal with a pleading motion, so that the allegations must be taken as true with all reasonable inferences drawn in Harris' favor.

7. Because the only allegations against Hiser have dropped out of the case, he is dismissed as a defendant. All other defendants remain: the Committee members because of the hearing issues, McDonald because of the excessive segregation and illegitimate transfer claims and DeRobertis because of the habeas claim discussed in the next section.

It goes on to point out that in *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), the Court treated the habeas petition by a state prisoner challenging the conditions of confinement as a claim for relief under Section 1983. But *Wilwording* said (*id.* at 251, 92 S.Ct. at 409) that the claim *was* "cognizable in federal habeas corpus" as well. Moreover, *Wilwording* cited to *Johnson v. Avery*, 393 U.S. 483, 484, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969), where the Court had ruled favorably on a prisoner's habeas petition based on his disciplinary confinement for having assisted fellow prisoners in preparing legal papers.

It might be "better," as the Advisory Committee puts it, to utilize Section 1983 complaints and habeas petitions in discrete—and complementary—realms. But *Wilwording* and *Johnson* are still good law. This Court is constrained to hold that a habeas petition challenging conditions of confinement may still be brought, even though Section 1983 will also invariably be available in such cases. Harris' habeas claim grounded in his transfer to Stateville is valid, and defendants' motion to dismiss Count III must be denied.

### Conclusion

Defendants' motion to dismiss is granted in part and denied in part as to Complaint Count I, granted as to Count II and denied as to Count III. Hiser is dismissed from the action in its entirety. All other defendants are ordered to answer on or before January 27, 1982 and a status report is set for March 3, 1982 at 9:15 a. m.