931 F.2d 895
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
W. Foster SELLERS, Petitioner-Appellant,
v.
Gary L. HENMAN, Respondent-Appellee.
 No. 90-1739.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 11, 1991.*
Decided April 22, 1991.
 
 Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.
 
 Order
 
 1
 W. Foster Sellers, a prisoner at Marion, sought a writ of habeas corpus under 28 U.S.C. Sec. 2241. Sellers contends that a disciplinary hearing held in 1986, the outcome of which led to his transfer to Marion, was conducted unconstitutionally.
 
 
 2
 The principal consequence of the hearing, in addition to the transfer, was the loss of good time credits. This is why the suit is properly a collateral attack rather than a Bivens action. Sellers informs us that the good time credits have since been restored. The case is therefore moot to the extent the parties debate good time. The only other claim before us is Sellers' demand for a re-transfer. (None other is properly presented, because the sole defendant is Gary Henman, the Warden of Marion. Sellers cannot obtain from Henman damages on account of events at other prisons.) With respect to this claim, we agree with the reasons and disposition of the district judge, whose opinion we attach.
 
 
 3
 The judgment is vacated, and the case remanded with instructions to dismiss as moot Sellers' request for restoration of good time credits. The judgment is otherwise affirmed.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE SOUTHERN DISTRICT OF ILLINOIS
 
 4
 W. FOSTER SELLERS, Petitioner,
 
 
 5
 v.
 
 
 6
 GARY L. HENMAN, Respondent.
 
 CAUSE NO. 86-3608
 Feb. 7, 1990
 MEMORANDUM AND ORDER
 STIEHL, District Judge:
 
 7
 Before the Court is a Report and Recommendation of United States Magistrate Philip M. Frazier that petitioner's petition for a writ of habeas corpus be denied. Petitioner has filed objections to the magistrate's report; therefore, the Court will make a de novo review of those portions of the record to which objections were made, pursuant to 28 U.S.C. sec. 636(b)(1).
 
 
 8
 Petitioner is an inmate currently confined at the United States Penitentiary in Marion, Illinois (USP-Marion). Prior to his confinement at USP-Marion, he had been confined at the United States Penitentiary in Lewisburg, Pennsylvania (USP-Lewisburg) and the United States Penitentiary in Leavenworth, Kansas (USP-Leavenworth).
 
 
 9
 On January 29, 1986 petitioner was transferred from USP-Lewisburg to USP-Leavenworth. On February 19, 1986 Lt. Stan Evans of USP-Lewisburg contacted Tom Foltz, a staff member in the Receiving and Discharge Department (R & D) at USP-Leavenworth and informed him that an inmate's property to be mailed from USP-Lewisburg to USP-Leavenworth might contain contraband. On February 20, 1986 Foltz and R.W. Groves, another R & D employee, performed a complete inventory of all property received from USP-Lewisburg. All such property belonged to petitioner. Upon examination with an x-ray machine, Foltz and Groves suspected that one of petitioner's file folders might contain a weapon. They then contacted Lt. C.H. Trout, Special Investigative Supervisor at USP-Leavenworth, who proceeded to examine the folder. He discovered a false bottom which contained a nine-inch knife and six bags of cocaine.
 
 
 10
 Trout prepared an Incident Report charging petitioner with possession/introduction of a weapon and possession/introduction of narcotics and served it to petitioner on February 20, 1986. An IDC hearing was held on February 26, 1986. Petitioner was assisted by a staff representative at this hearing, and introduced documentary evidence to the effect that inmates at USP-Lewisburg enjoyed relatively free and unsupervised access to the R & D room, suggesting that someone "planted" the contraband in his property prior to its being shipped to USP-Leavenworth. Petitioner did not request any witnesses. The IDC also had before it the Incident Report prepared by Trout and affidavits of Foltz and Groves outlining the events described above.
 
 
 11
 The IDC found petitioner guilty of "attempted" possession/introduction of the weapon and narcotics, and imposed sanctions, including the placement of petitioner in disciplinary segregation for sixty days, the forfeiture of 300 days of statutory good time, and a recommendation for disciplinary transfer and confiscation of the contraband. In its report finding petitioner guilty, the IDC relied specifically on the allegations of Trout concerning the discovery of a knife and cocaine in a box of incoming personal property belonging to petitioner. The IDC also noted that petitioner questioned the basis for Evans' knowledge regarding the contents of the incoming property, but concluded that that information had no bearing on the case. At the conclusion of the hearing and verdict, petitioner requested a continuance in order to obtain further evidence regarding the handling of his property prior to its arrival at USP-Leavenworth. His request was denied, and the IDC did not enter the fact of the motion into the record.
 
 
 12
 Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. sec. 2241 alleging that the procedures used by the IDC in adjudging him guilty violated his due process rights under the Fifth Amendment of the United States Constitution. The Court will address each individual contention in turn.
 
 
 13
 Petitioner alleges that he was denied due process because the IDC proceeding was prejudiced and biased against him. Specifically, he argues that because the section of the IDC Report entitled "Specific Evidence Relied on to Support Findings" was partially filled out prior to the hearing, the inference is inescapable that the IDC had made up its mind as to petitioner's guilt prior to the hearing.
 
 
 14
 The Court rejects petitioner's argument that the IDC was biased. In his affidavit (read into the record by the magistrate at petitioner's evidentiary hearing), IDC Chairman Don Romine stated that because of the high volume of inmate disciplinary actions processed at USP-Leavenworth, portions of the IDC's Reports are filled out ahead of time in order to expedite processing. In this case, this practice included the copying word-for-word of the allegations made by Trout in his Incident Report onto the IDC Report prior to the hearing. Romine stated with regard to this practice that if, after the hearing, the inmate was found to have committed the prohibited act, the IDC Report would be completed. If the decision of the IDC was that the inmate did not commit the prohibited act, he stated, the IDC Report would be left uncompleted and thrown away.
 
 
 15
 Petitioner was afforded notice of the allegations against him, was given an opportunity to be heard and to present witnesses, and was found guilty by a committee which put its findings on record. See McKinney v. Meese, 831 F.2d 728, 733 (7th Cir.1987). Perhaps the IDC could find other ways to expedite the disciplinary process with less appearance of bias. However, given Romine's explanation, it does not appear that petitioner's right to a hearing before a neutral committee was significantly impaired. In reaching this conclusion the Court is mindful that:
 
 
 16
 [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.
 
 
 17
 Mendoza v. Miller, 779 F.2d 1287, 1292 (7th Cir.1985), cert. denied, 476 U.S. 1142 (1986), citing Bell v. Wolfish, 441 U.S. 520, 545-47 (1979).
 
 
 18
 Petitioner also claims that he was not provided an adequate statement of the evidentiary basis for the action taken. He argues that because portions of the IDC Report were filled out prior to the hearing the IDC made no "findings" and thus violated the requirement in Wolff v. McDonnell, 418 U.S. 539, 564 (1974), of a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. Petitioner also argues that the IDC failed to meet this standard because it failed to provide any explanation for its rejection of his evidence.
 
 
 19
 In Wolff, the Supreme Court noted that the reasons for its requirement of a written statement were to protect the inmate from collateral consequences based on a misunderstanding of the nature of the original proceeding and to insure that administrators, faced with scrutiny by state officials, the public, and the court, will act fairly where constitutional rights are at stake. The Seventh Circuit has read Wolff in the light of the Supreme Court's subsequent decision in Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 453-56 (1985), holding that the requirements of procedural due process are satisfied if the revocation of good time credits in a prison disciplinary proceeding is supported by "some evidence in the record." Culbert v. Young, 834 F.2d 624, 629-31 (7th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1296 (1988). In Culbert, the Seventh Circuit reviewed its prior decisions regarding the sufficiency of a disciplinary committee's statement of findings in the context of Hill and concluded that the type of statements which will satisfy the constitutional minimum will depend on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides. Id. at 631. There, the court held that simply referring to the conduct report as the basis for a guilt determination will satisfy due process requirements where the only issue presented at the hearing involved the credibility of the conduct report as opposed to the plaintiff's account of the incident. Id.
 
 
 20
 Petitioner relies heavily on Chavis v. Rowe, 643 F.2d 1281 (7th Cir.1981), for the proposition that a disciplinary committee must always state its reasons for rejecting the prisoner's evidence. The prisoner in Chavis, however, was charged with stabbing a correctional officer, a much more serious charge than attempting to introduce contraband into the prison. Id. at 1283. The record in Chavis was also much more complex than that found here, including a report of another correctional officer tending to show the prisoner's innocence and the prisoner's own testimony denying any involvement in the incident. Id. at 1287.
 
 
 21
 Here, the Report details the allegations made in Trout's Incident Report to the effect that a knife and cocaine were discovered in a box of petitioner's personal property. To the IDC, this was an extremely simple case. Petitioner did not contest the fact that the contraband was found in his property or the fact that the property while at USP-Leavenworth was handled only by prison staff. In view of the rationale behind the Wolff decision as read in the light of Hill, the IDC's statement satisfied the requirements of due process. Regardless of whether portions were typed in before-hand or not, it is quite clear as to the nature of the charges, satisfying Wolff's concerns regarding confusion as to the nature of the proceedings. Further, given the requirements of Hill, it is clear that there was sufficient evidence to support the committee's finding. Thus the IDC's failure to provide reasons for its rejection of petitioner's evidence does not violate due process. See, Brown v. Frey, 807 F.2d 1407, 1413-14 (8th Cir.1986).
 
 
 22
 Petitioner next argues that his due process rights were violated by the IDC's failure to provide notice of its use of a confidential report prepared by Trout in reaching its decision. He alleges that during the course of discovery in a separate civil suit growing out of the same set of facts, he, for the first time, became aware of this report. Petitioner alleges that it included information regarding Evans' knowledge that contraband might be hidden in property being shipped from USP-Lewisburg to USP-Leavenworth. Petitioner notes that Bureau of Prisons Regulations require that the IDC provide an inmate's staff representative with all "relevant materials" prior to a hearing for use in presentation on the inmate's behalf. 28 C.F.R. sec. 541.14(b)(2). Petitioner also relies on Mendoza, supra, in which an inmate was accused of murdering another inmate. In finding Mendoza guilty, the IDC relied on a confidential report prepared by the prison investigator containing information from "reliable sources" implicating the inmate. Mendoza, 779 F.2d at 1290-91. The Seventh Circuit rejected the argument that the failure to provide the prisoner with advance notice of the existence of this report violated due process, noting that the prisoner had failed to exercise his right to request a staff representative. Id. at 1294. Citing the Bureau of Prisons Regulations, however, the Court stated that had the inmate "requested a staff representative, the staff representative would have been given a copy of the investigative report and would have received advance notice of the report's reliance on confidential information." Id.
 
 
 23
 Not every violation of administrative procedures in connection with disciplinary proceedings automatically equates with a due process violation. Harris v. MacDonald, 532 F.Supp. 36, 39 (N.D.Ill.1982) (state prison procedures), citing, United States ex rel. Houston v. Warden, Stateville Correctional Center, 635 F.2d 656, 658-59 (7th Cir.1980), cert. denied, 454 U.S. 843 (1981). Instead, if the procedures, albeit technically faulty, taken as a whole cause no "harm or prejudice" to the prisoner, then due process requirements are met. Harris, 532 F.Supp. at 40.
 
 
 24
 Here, despite petitioner's evidence that the IDC "reviewed" or "considered" Trout's report, there is no evidence that it served as the basis for a finding of guilt as in Mendoza. Because the IDC clearly focused only on events at USP-Leavenworth in reaching its conclusion, the committee's failure to notify petitioner of Trout's report did not harm or prejudice him in any way. There is no evidence that the report played any more than a minor part in the IDC's decision.
 
 
 25
 This reasoning also forecloses petitioner's claim that the IDC was required to make a determination of the reliability of confidential informants relied upon and to provide a written record of that determination. As no such confidential informants were relied upon, no such requirement arose.
 
 
 26
 Petitioner also objects to the IDC's denial of his request for a continuance after the hearing and verdict. The Bureau of Prisons Regulations state that "at any time prior to making a decision as to whether or not a prohibited act was committed ..." the IDC may continue the hearing until a later date if further investigation or more evidence is needed. 28 C.F.R. sec. 541.17(e) (emphasis added). Because petitioner waited until after the IDC's decision to request a continuance, this provision does not apply. The remainder of petitioner's argument consists of the attempt to persuade the Court that the IDC reached the wrong conclusion as to his guilt. The Court finds no due process violation in the IDC's refusal to grant petitioner a continuance.
 
 
 27
 Finally, petitioner argues that because the standard of review for IDC proceedings was one of "substantial evidence" at the time of his hearing, 28 C.F.R. sec. 541.17(f), he has a "liberty interest" in this Court applying that standard rather than the "some evidence" standard of Hill, supra. Petitioner also argues that regardless of the standard of review used, there is not sufficient evidence in the record to sustain the IDC's finding of guilt.
 
 
 28
 The Court agrees with the government that the "substantial evidence" test is the test for the IDC and the "some evidence" test of Hill is the test upon judicial review of the IDC's findings. Here, the discovery of contraband concealed in a false-bottomed folder in petitioner's personal property was sufficient to satisfy the "some evidence" standard of Hill. This claim, therefore, must also fail.
 
 
 29
 Accordingly, the Court adopts the magistrate's recommendation. Petitioner's application for a writ of habeas corpus is DENIED and the petition for habeas corpus is DISMISSED. Petitioner's motion for default judgment is DENIED as moot.
 
 
 30
 IT IS SO ORDERED.
 
 
 31
 /s/William D. Stiehl
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record