**Walter WOODALL, Plaintiff,**

v.

**Dawn PARTILLA, Individually, Servomation, Inc., Individually and as a Corporation, Captain J. Tibbitts, Lieutenant W.B. Hampton, L. Green, R. Matuszeuski and J.W. Fairman, Individually and in their Official Capacity, Defendants.**

No. 83 C 3208.

United States District Court,
N.D. Illinois, E.D.

Feb. 29, 1984.

Walter Woodall, pro se.

Bart T. Murphy, Asst. Atty. Gen., Sandra Young/John Wardrope, Purcell & Wardrope, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Walter Woodall, formerly an inmate at Joliet Correctional Center in Joliet, Illinois, brings this *pro se* action pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights and state and federal law. Woodall seeks injunctive, declaratory and monetary relief. Five defendants ("Joliet defendants") are staff at Joliet Correctional Center.[1] Also named as defendants are Servomation, Inc., a private corporation which provides food service at Joliet Correctional Center, and Dawn Partilla, an employee of Servomation. Before the Court are a motion to dismiss on behalf of the Joliet defendants, a motion to dismiss on behalf of Servomation, Inc. and a motion to quash service of process on behalf of Partilla.

Woodall alleges the facts as follows. Since March, 1983, Woodall had been assigned to work in the officers' kitchen/dining room at the prison. He worked an average of 16–18 hours per day and received a base pay of $30.00 per month along with a bonus of approximately $32.00 per month. Servomation, not Joliet Correctional Center, paid his wages.

On April 18, 1983, Woodall and another inmate were working in the officers' kitchen/dining room when Partilla offered them cigarettes. Woodall questioned Partilla, as he had on prior occasions, regarding the justification for Servomation paying inmate workers below the minimum hourly wage prescribed by state and federal law. Partilla became noticeably irritated by the inquiry, and Woodall dropped the discussion. Shortly thereafter, at approximately 8:00

---

**1.** The Joliet defendants are: J. Tibbitts, shift commander; W.B. Hampton, Adjustment Committee Chairman; L. Green, Adjustment Committee member; R. Matuszeuski, Adjustment Committee member; J.W. Fairman, warden.

p.m., Woodall asked Partilla for a light for a cigarette he had accepted from her earlier. She told him not to bother her. When he repeated his request, she told him to leave her alone and left the room.

Approximately an hour later, Woodall was placed in segregation. At 2:00 a.m. on April 19, 1983, he was served with a resident disciplinary report ("RDR") written by Partilla and signed as reviewed by defendant Tibbitts, shift commander. In the RDR, Partilla gave a different version of her confrontation with Woodall. Her version formed the basis for charges against Woodall of assault, sexual misconduct, intimidation and threats, insolence, disobeying a direct order and violation of rules.

On April 25, 1983, Woodall appeared before the Adjustment Committee at Joliet Correctional Center. The Committee found him guilty of all charges except insolence. The proceedings were recorded on a preprinted form titled Adjustment Committee Summary. See Plaintiff's Exhibit No. 2. In the "Record of Proceedings" section of the summary, the Committee noted: "Resident denied report as it is written. Resident only stated he asked reporting employee for a light." In the section of the summary designated "Disposition and Basis for Decision," the Committee stated: "Resident was positively identified by employee. Resident was in area of reported infraction." The disciplinary action taken against Woodall consisted of 360 days in segregation, revocation of 360 days good time and demotion to "C" grade (maximum security) for 360 days.

Woodall alleges that the loss of 360 days good time would have extended his incarceration 150 days beyond his maximum release date. Immediately subsequent to the filing of this case, however, Michael Lane, Director of the Illinois Department of Corrections ("IDOC") ordered the revocation of 360 days good time reduced to 210 days to correspond to Woodall's maximum release date. See Plaintiff's Motion in Opposition to Certain Defendants' Motion to Dismiss at 2, n. 1.

Based upon the foregoing allegations, Woodall raises several claims. Broadly stated, he alleges that the disciplinary process was initiated against him "by a non-employee [Partilla] of the State, acting under color of law in an illegal manner." Complaint at 9. Because the disciplinary process was allegedly set in motion illegally, everything which flowed from Partilla's writing of the RDR—i.e., placing Woodall in segregation, charging him with rule infractions, conducting a hearing on the charges, finding him guilty and imposing sanctions—was also illegal. Thus, the very fact of these proceedings allegedly violated Woodall's constitutional rights. In addition, defendants allegedly deprived Woodall of various constitutional protections to which he allegedly was entitled in the course of the proceedings. Woodall cites the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments as the sources of the constitutional rights infringed. Woodall also claims that defendants violated the Constitution and state and federal laws by contracting out his labor to a corporation under contract with the IDOC, Joliet Correctional Center, and the State of Illinois, for an excessive number of working hours per day at a wage level below the minimum required by law.

For purposes of discussion, the issues thus raised may be categorized as follows: (1) initiation of the disciplinary process; (2) placement in segregation prior to Adjustment Committee hearing; (3) Adjustment Committee decision; (4) sanctions imposed upon finding Woodall guilty; (5) IDOC review of Adjustment Committee decision; (6) labor issues. We shall address Partilla's motion to quash service of process in Section I.

I. *Initiation of the Disciplinary Process*

Woodall argues that Partilla is an employee of Servomation and not an employee of the IDOC or Joliet Correctional Center. According to Woodall, neither Partilla nor Servomation has the authority to act under color of state law and make charges against or impose discipline on any inmate through direct use of the IDOC disciplinary

process. He cites IDOC Administrative Regulation ("AR") 804 as support for his position. AR 804 concerns the administration of discipline of inmates in the adult division of the IDOC. It indicates rule infractions for which inmates can be disciplined and the extent of that discipline. AR 804 provides: "Every *employee*, regardless of assignment, has the duty to observe the conduct of inmates. If an employee either observes an inmate commit an offense, discovers evidence of its commission, or receives information from a reliable witness of such conduct, *he* shall prepare an inmate disciplinary report." (Emphasis added). Thus, in Woodall's view, Partilla and Servomation could only *report* an incident to an employee. That employee could then write an RDR. Furthermore, says Woodall, IDOC staff could not confer upon Servomation, any of its employees or any other civilian individual the authority to act under color of state law and cause the imposition of punishment upon an inmate in a direct manner as was done in this case.

In short, Woodall argues that Partilla instigated the disciplinary process without legal authority since she was not an IDOC employee and the Joliet defendants could not legally give her authority.[2] By using the state-enacted disciplinary process, she acted under color of state law. Consequently, she is liable for the very fact of the disciplinary proceedings and for all constitutional violations which flowed from them.

To analyze whether Woodall's allegations state a claim against Partilla cognizable under 42 U.S.C. § 1983, we must first address whether the complaint sufficiently alleges that Partilla acted under color of state law. *See Parratt v. Taylor,*

451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). The conduct complained of consists of Partilla, "a non-employee of the State," writing an RDR which set in motion disciplinary proceedings against Woodall. This conduct is analogous to that of a private citizen who acts as complainant in a criminal prosecution. Even though a criminal action is itself prosecuted under color of law, the act of complaining by a private citizen is not state action. *Grow v. Fisher*, 523 F.2d 875, 879 (7th Cir.1975). If this principle is applied to the instant case, Partilla, who acted merely as "complainant" in the disciplinary process, did not act under color of law. Under this analysis, because state action is a jurisdictional prerequisite to a § 1983 suit, Woodall's claim against Partilla fails.

Servomation and the Joliet defendants, in their respective motions to dismiss, take a second approach to clear Partilla, and consequently themselves, of any wrongdoing in the initiation of the disciplinary action. They contend that Partilla was an employee as that term is used in AR 804, and as such, she did not wrongly institute the disciplinary procedure. It follows, then, that no cause of action is stated against Servomation for allegedly authorizing or acquiescing in Partilla's act. Similarly, under this approach, the allegations do not give rise to a claim against the Joliet defendants for authorizing Partilla's writing of the RDR or for acting upon the RDR.

But Woodall argues strenuously, citing sections of the Illinois Revised Statutes, that Partilla was not an IDOC employee. For the purpose of a third analytical approach, we accept his theory. Under the first analysis, we also viewed Partilla as a non-employee of the State. We then concluded that her conduct did not constitute the state action essential to a § 1983 suit.

---

**2.** Woodall also charges that the disciplinary process was initiated without probable cause. We dismiss this claim, as no Fourth Amendment rights are implicated here. Nothing in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which defined the procedural safeguards constitutionally required in the context of prison disciplinary proceedings, requires probable cause for issuance of a resident disciplinary report. We also dismiss Woodall's claims that defendants violated his constitutional rights by failing to seek a grand jury indictment against him and by denying him a public trial. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply. *Id.* at 556, 94 S.Ct. at 2974–75.

Even if we now, for purposes of our third approach, construe Woodall's allegations to find Partilla's initiation of the disciplinary process did constitute state action, so as to satisfy the jurisdictional prerequisite, no constitutional violation is stated.

 The Adjustment Committee ordered Woodall into segregation and revoked good time. Prison disciplinary proceedings involving assignment to punitive segregation and the loss of good time implicate the deprivation of "liberty" in Fourteenth Amendment terms. *Wolff v. McDonnell*, 418 U.S. 539, 556–58, 94 S.Ct. 2963, 2974–76, 41 L.Ed.2d 935 (1974). Thus, the due process clause requires that the disciplinary proceedings be subject to procedural due process protections. *Id.* The Supreme Court in *Wolff* established minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. The Court did not, as one of the procedural safeguards, limit the persons authorized to write disciplinary reports and initiate the disciplinary process.

 Indeed, it is not even clear that defendants violated AR 804. Basing his argument on AR 804, Woodall contends that Partilla, a non-State employee, did not possess, and could not be given, the authority to write the RDR. Her instigation of the disciplinary process allegedly violated Woodall's due process rights. But we agree with the Joliet defendants that AR 804 on its face does not limit the persons empowered to write RDR's. Rather, it cre-

ates the affirmative obligation of every employee to observe and report violations. But even if defendants did not comply with AR 804, and AR 804 could be construed to provide an inmate with a procedural right to have an RDR written only by designated persons, a state procedural right by itself is not accorded federal due process protection. *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir.1982). Only departures from procedures which are constitutionally mandated provide a basis for a constitutional claim. *Watts v. Morgan*, 572 F.Supp. 1385 at 1391 (N.D.Ill.1983), *appeal dismissed*, No. 83–2783 (7th Cir. Nov. 21, 1983). As stated earlier, a limit on the persons authorized to write disciplinary reports and initiate the disciplinary process is not a procedural safeguard that is constitutionally mandated. Thus, defendants' alleged failure to comply with AR 804 states no constitutional claim.

Therefore, regardless of the analytical approach utilized, the claim that Partilla set the disciplinary process in motion illegally so that the very fact of the proceedings violated Woodall's constitutional rights is not cognizable under § 1983. The initiation and the fact of the proceedings pass constitutional muster. Thus, no claims are stated against Partilla for the institution or fact of the disciplinary proceedings, or for constitutional violations which allegedly occurred in the course of the proceedings. Accordingly, Partilla is dismissed as a defendant in this action.[3]

---

**3.** Partilla is dismissed pursuant to 28 U.S.C. § 1915(d). Although a motion to dismiss on behalf of Partilla is not presently before the Court, because Woodall proceeds *in forma pauperis* in this cause, the Court is authorized to consider the sufficiency of the allegations against her under § 1915(d) as interpreted in *Wartman v. Milwaukee County Court*, 510 F.2d 130 (7th Cir.1975). Fed.R.Civ.P. 4(d)(1) provides in relevant part that service of the summons and complaint shall be made upon an individual (1) by delivering a copy to him personally, or (2) by leaving copies at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or (3) by delivering a copy to an agent authorized to receive service of process.

From the sworn affidavits of Partilla and one Sande Vardal, it appears that Partilla and Var-

dal resided in an apartment on the second floor above a business known as Vardal Surveying Systems. Partilla and Vardal state that, although the United States Marshal left a copy of the summons and complaint on the business premises, they have never been personally served. Partilla states further that she has never authorized Vardal Surveying Systems to receive service of process. The United States Marshal return similarly indicates that the summons and complaint were left on the business premises but, contrary to the Partilla/Vardal version, states that the copy was left with Vardal. Woodall does not controvert either version.

Whether the copy of the summons and complaint was left at the business with Vardal or at the business with someone else is of no consequence because, in either event, there has been

With respect to Servomation, the threshold inquiry, as with Partilla, is whether Servomation acted under color of state law. Clearly, if it did not, it is not amenable to suit under § 1983. Even assuming, however, that Servomation's conduct constituted state action, no cause of action is stated against Servomation for authorizing or acquiescing in Partilla's act. This conclusion is compelled by our finding that Partilla's conduct did not violate the Constitution. Thus, as with Partilla, no claims are stated against Servomation for the initiation or fact of the disciplinary proceedings, or for constitutional violations which allegedly occurred in the course of the proceedings. Accordingly, Servomation's motion to dismiss is granted as to these issues.[4]

Similarly, Woodall states no claims against the Joliet defendants for authorizing Partilla's writing of the RDR, for acting upon the RDR or for the very fact of the proceedings. Because the only allegation against Tibbitts is that he erred in signing the RDR and processing it for service upon Woodall, and because we have found no constitutional rights infringed by the instigation or fact of the proceedings, Tibbitts is dismissed from this action.

Unlike Partilla, Servomation and Tibbitts, however, the involvement of the remaining four Joliet defendants (Hampton, Green, Matuszeuski and Fairman) in the events which stemmed from the confrontation between Woodall and Partilla did not end with issuance of the RDR. The four Joliet defendants allegedly participated in the subsequent disciplinary proceedings. Woodall alleges that he was denied various constitutional protections in the course of these proceedings. The Court now turns to address these claims in Sections II through V of this opinion.

no compliance with any of the alternatives provided in Fed.R.Civ.P. 4(d)(1). Accordingly, Partilla's motion to quash service of process is granted. Further attempts to serve Partilla are rendered unnecessary by her dismissal from this action.

## II. *Placement in Segregation Prior to Adjustment Committee Hearing*

Woodall alleges that he was placed in segregation on April 18, 1983, and allegedly did not appear before the Adjustment Committee until April 25, 1983.

In *Hughes v. Rowe*, 449 U.S. 5, 11, 101 S.Ct. 173, 177, 66 L.Ed.2d 163 (1980), the Supreme Court held that segregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protections is not justified by apprehended emergency conditions. *See also Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982). In the pleadings of the case at bar, there is no suggestion that immediate segregation was necessitated by emergency conditions. Thus, we cannot say that it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

Woodall has failed, however, to identify the individuals responsible for placing him in segregation without a prior hearing. To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982). Accordingly, Woodall's claim that he was placed in segregation without a prior hearing is dismissed with leave to amend to name the individuals responsible.

## III. *Adjustment Committee Decision*

[12] Woodall challenges the decision of the Adjustment Committee on several grounds. First, he asserts that defendants failed to investigate the charges made by Partilla. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974),

4. The remaining claims against Servomation—namely, the labor claims—will be addressed in Section VI of this opinion.

the Supreme Court defined what process is due an inmate in the context of prison disciplinary proceedings. "Nothing in *Wolff* absolutely requires prison officials to investigate disciplinary charges prior to a hearing." *United States ex rel. Wilson v. DeRobertis,* 508 F.Supp. 360, 362 (N.D.Ill. 1981). While an investigation may at times be necessary to ensure fundamental fairness, *id.,* the Court does not find any constitutional error in defendants' failure to conduct an investigation in the instant case. Woodall does not allege, for example, that an investigation would have yielded witnesses whose testimony would have controverted Partilla's charges. Indeed, Woodall did not even request witnesses at his hearing, although he alleges that another inmate could corroborate his story. Thus, the Court finds that the complaint states no cause of action with respect to the failure to investigate.

■ Next, Woodall states that the Adjustment Committee rejected evidence helpful to him and reached its decision without independent corroboration of Partilla's charges. The Court construes these assertions as a general attack upon the sufficiency of the evidence to support the finding of guilt. The findings of a prison disciplinary committee are not subject to attack as a violation of due process unless no reasonable adjudicator could have found the prisoner guilty of the offense charged on the basis of the evidence presented. *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983).

■ Woodall was given an opportunity to respond to the charges at the hearing before the Adjustment Committee. He apparently was provided with an opportunity to call witnesses in his defense, but he did not request the Committee to interview the inmate whom he now contends can corroborate his story. After hearing Woodall's testimony, the Committee chose to rely upon Partilla's written eyewitness account. The Committee found that Woodall was positively identified by Partilla, and that Woodall was in the area of the report-

ed infraction. While it is true that Partilla did not appear at the hearing in person, Woodall did not request her attendance. Moreover, confrontation and cross-examination of witnesses in the context of a prison disciplinary proceeding are not absolutely required; they are matters left to the sound discretion of prison officials. *Wolff,* 418 U.S. at 567–69, 94 S.Ct. at 2980–81. Upon examination of Woodall's allegations, we are not persuaded that no reasonable adjudicator could have found Woodall guilty of the offenses on the basis of the evidence presented. We conclude that Woodall has not presented a viable claim of denial of substantive due process with respect to the sufficiency of the evidence.

Woodall's final contention concerns "the minimal rationale in determining guilt." Plaintiff's Motion in Opposition to Certain Defendants' Motion to Dismiss at 6. The Court construes this as an attack upon the constitutional adequacy of the Adjustment Committee Summary. The court in *Redding v. Fairman,* 717 F.2d 1105, 1116 (7th Cir.1983), recently addressed this issue, stating that

> [t]he line between constitutional adequacy and inadequacy is a fine, but important, one. When the Committee writes "based on all available evidence the resident is guilty," no agency or court can discern the basis for the Committee's rulings. If, however, the Committee writes "resident is lying," or "the guard saw him therefore ...," or "resident admits he committed the act charged," or "resident does not refute charges," or another statement establishing the evidence underlying its decision, then the inmate is protected from a mischaracterization of the disciplinary action when it comes under review.

(Footnote omitted).

■ In the present case, the Adjustment Committee Summary reads: "Resident denied report as it is written. Resident only stated he asked reporting employee for a light," and "Resident was positively identified by employee. Resident was in area of reported infraction." It is

clear that the Committee, faced with conflicting evidence, chose to believe the reporting employee. The Committee specifically stated the two pieces of evidence on which it relied in reaching its decision that Woodall was guilty of all charges except insolence. We conclude that, while the Committee's statement of reasons for its ruling is brief, it nevertheless satisfies minimum constitutional requirements.

### IV. *Sanctions Imposed Upon Finding Woodall Guilty*

Upon finding Woodall guilty of all charges except insolence, the Adjustment Committee recommended placing Woodall in segregation for 360 days, revoking 360 days good time and demoting him to "C" grade for 360 days. Woodall alleges that the loss of 360 days good time would have extended his imprisonment 150 days beyond his maximum release date. Woodall contends that the fact that the Director of the IDOC ordered the punishment reduced to correspond to Woodall's maximum release date "does not lessen the actions of the disciplinary committee at the time the punishment was meted out. By willfully extending plaintiff's incarceration 150 days beyond his maximum incarceration date, is an obvious abuse of power." Plaintiff's Motion in Opposition to Certain Defendants' Motion to Dismiss at 7–8.

■ The Court rejects Woodall's contention that this states a constitutional violation. Because it appears that the mistake was rectified before he served any of the excess, he suffered no loss of liberty. Although Woodall characterizes defendants' extension of his release date as "willful," he provides no facts in support thereof. Accordingly, this claim is dismissed.

■ Woodall also suggests that the sanctions imposed were disproportionate to the offenses of which he was found guilty. The Court does not agree. The Adjustment Committee found Woodall guilty of assault, sexual misconduct, intimidation and threats, disobeying a direct order and violation of rules. IDOC AR 804 lists chargeable offenses and the maximum penalties that the Adjustment Committee may impose if it finds the inmate guilty. AR 804 provides a maximum penalty of 360 days in "B" or "C" grade, 360 days revocation of good time and 360 days in segregation for each of the offenses of assault and sexual misconduct. Lesser penalties are prescribed for the other offenses Woodall was found to have committed. AR 804(II)(I) indicates that when an inmate is found guilty of more than one offense arising from a single incident, the maximum penalty shall not exceed the maximum penalty for the most serious offense he is found to have committed. Woodall's punishment comported with this provision. Thus, the punishment imposed upon Woodall was within the dictates of AR 804.

Furthermore, Woodall's actions represented serious violations of prison discipline, and we find that the resultant punishment he received was not so disproportionate as to be cruel and unusual. In *Chapman v. Kleindienst,* 507 F.2d 1246, 1252 (7th Cir.1974), the court stated that courts reviewing the proportionality of prison disciplinary measures must consider the circumstances surrounding the offense, the prisoner's disciplinary record and the offense for which he was originally incarcerated. In the case at bar, we have before us no allegations concerning the latter two factors. But even if Woodall had never before been charged with a violation of prison rules and the offense for which he was originally imprisoned was of a minor nature, we find that the circumstances surrounding his multiple offenses support the conclusion that the punishment imposed was not excessive. Woodall instigated the confrontation with Partilla and defied her order to leave her alone. Such challenges to authority interfere with prison operations and may threaten prison security. Accordingly, the Court holds that Woodall's punishment does not give rise to an Eighth Amendment violation. *See generally Madyun v. Franzen,* 704 F.2d 954 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983); *Chapman v. Pickett,* 586 F.2d 22 (7th Cir.1978).

### V. IDOC Review of Adjustment Committee Decision

Woodall alleges that disciplinary sanctions were imposed upon him and upheld without affording him an appeal hearing at the institutional level and further upheld at the department level at a hearing held in his absence. Thus, Woodall claims that defendants denied him minimum requirements of due process.

This claim is without merit. "[T]he Fourteenth Amendment does not mandate administrative review of prison disciplinary actions." *Greer v. DeRobertis*, 568 F.Supp. 1370, 1375 (N.D.Ill.1983). *See also Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D.Ill.1982). Accordingly, this claim is dismissed.

### VI. Labor Claims

Woodall claims that defendants violated the Constitution and state and federal laws by contracting out his labor to Servomation for an excessive number of working hours per day at a wage level below the minimum required by law.

Once again, we are confronted with the threshold task of determining whether the complaint sufficiently alleges that Servomation, a private corporation, acted under color of state law so as to be amenable to Woodall's labor claims under § 1983. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). The focus of our analysis must be whether the state involvement in the challenged action is "significant." *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 1634, 18 L.Ed.2d 830 (1967). Stated otherwise, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action ... so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

With these principles in mind, we consider the case at bar. Servomation, Inc., is a private corporation contracted by the IDOC to prepare and serve food to all inmates and staff at Joliet Correctional Center. According to Woodall, Servomation employs civilian food supervisors and utilizes inmate labor. Thus, Servomation's civilian employees work within the confines of the prison alongside of prisoners and prison personnel. Servomation, not Joliet Correctional Center, paid Woodall's wages. It is not unreasonable to infer that Servomation civilian employees, in conjunction with prison staff, directed Woodall's work. Indeed, Servomation allegedly was partially responsible for forcing Woodall to work excessive hours. Servomation, by allegedly compelling a prisoner to work, exercised a typically state power. "[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966).

Servomation contends that its relationship with the state was limited to a contract to provide goods and services. The allegations of the complaint, however, suggest a much closer nexus. The Court notes its obligations to liberally construe the pleadings of the *pro se* litigant, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and to view the allegations of the complaint and all reasonable inferences which can be drawn from them as true. *See Spence v. Staras*, 507 F.2d 554, 557 (7th Cir.1974). To be sure, Woodall's allegations do not precisely define the relationship between Servomation and the state, and we express no opinion as to the ultimate resolution of this issue. But, on the basis of the pleadings before us, we cannot say with assurance that it is beyond doubt that Woodall can prove no set of facts that would give rise to a finding of state action.

Having decided that Woodall sufficiently alleges state action, the Court turns

to Woodall's labor claims. First, he claims that the IDOC contracted out his labor to Servomation contrary to Ill.Rev.Stat. ch. 38, § 1003–12–2(a) (1981 & Supp.1982).[5] Woodall quotes a partial sentence from the statute as follows: "[a] committed person's labor shall not be sold, contracted or hired out by the Department." He neglects to quote other pertinent portions of § 1003–12–2(a) which provide that the IDOC may "employ committed persons ... for the production of food or other necessities for its programs," and "[a] committed person's labor shall not be sold, contracted or hired out by the Department except under this Section." Thus, Woodall's employment, which was incidental to the production of food for the prison, did not violate § 1003–12–2(a). Accordingly, this claim is dismissed.

Next, Woodall contends that defendants violated his constitutional rights by forcing him to work 16–18 hours per day at a low wage level. These contentions are without merit. The Court notes initially that compelling prisoners to work does not contravene the Thirteenth Amendment. *See Draper v. Rhay,* 315 F.2d 193, 197 (9th Cir.), *cert. denied,* 375 U.S. 915, 84 S.Ct. 214, 11 L.Ed.2d 153 (1963). Work assignments, however, which amount to cruel and unusual punishment are forbidden. *See Ray v. Mabry,* 556 F.2d 881, 882 (8th Cir. 1977); *McLaughlin v. Royster,* 346 F.Supp. 297, 311 (E.D.Va.1972); *Fidtler v. Rundle,* 316 F.Supp. 535, 536 (E.D.Pa.1970). In *Talley v. Stephens,* 247 F.Supp. 683, 687 (E.D.Ark.1965), the court stated:

> [F]or prison officials knowingly to compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful constitutes an infliction of cruel and unusual punishment prohibited by the Eighth Amendment to the Constitution of the United States as included in the 14th Amendment.

In the instant case, Woodall does not allege that defendants compelled him to perform labor beyond his physical capabilities or which endangered his health. Nor does he allege that he suffered abusive treatment. Woodall merely asserts that he worked an average of 16–18 hours per day. The complaint is wholly devoid of specific allegations of extreme hardship in his working conditions and thus fails to state a claim under the Eighth Amendment.

Woodall's complaint that the amount of compensation he received for his labor violated constitutional requirements is also without merit. Prisoners have no constitutional right to be paid for their services. *See Manning v. Lockhart,* 623 F.2d 536, 538 (8th Cir.1980); *Sigler v. Lowrie,* 404 F.2d 659 (8th Cir.1968), *cert. denied,* 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969); *X v. Brierley,* 457 F.Supp. 350 (E.D.Pa.1978); *Borror v. White,* 377 F.Supp. 181 (W.D.Va.1974).

Accordingly, the Court dismisses Woodall's claims that defendants infringed his constitutional rights by requiring him to work 16–18 hours per day for low pay.

Woodall next contends that he is entitled to relief with respect to his hours and wages based on federal and state statutes. The federal law allegedly implicated is the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1976 & Supp. V 1981). Speaking in terms of employer-employee relationships, the Act is silent as to whether prison labor is covered. An "economic reality" test is generally used to determine whether an employer-employee relationship exists. *E.g., Sims v. Parke Davis & Co.,* 334 F.Supp. 774 (E.D.Mich.), *aff'd,* 453 F.2d 1259 (6th Cir.1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972). Courts confronted with the issue have concluded that a prisoner is not an employee within the meaning of the Act. *See Alexander v. Sara, Inc.,* 559 F.Supp. 42 (M.D. La.), *aff'd,* 721 F.2d 149 (5th Cir.1983); *Sims v. Parke Davis & Co.,* 334 F.Supp.

---

**5.** Woodall's state law claims and federal question claims derive from the same factual basis. Thus, the state law claims are before the Court under its pendent jurisdiction. *See generally Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005, 1007 (7th Cir.1982).

774 (E.D.Mich.), *aff'd*, 453 F.2d 1259 (6th Cir.1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); *Hudgins v. Hart*, 323 F.Supp. 898 (E.D.La.1971); *Huntley v. Gunn Furniture Co.*, 79 F.Supp. 110 (W.D.Mich.1948). In *Sims*, for example, to reach the conclusion that prisoners working in a pharmaceutical company were, in economic reality, not employees, the court noted several factors including (1) the fact that the company could not hire, fire or ultimately control the prisoners, and (2) the lack of a formal contractual relationship between the company and the prisoners. *Sims*, 334 F.Supp. at 786.

The court in *Worsley v. Lash*, 421 F.Supp. 556 (N.D.Ind.1976), utilized another approach to decide that a prisoner was never "employed" by the State of Indiana as contemplated by the Fair Labor Standards Act. The court found that the prisoner's work was authorized by a state statute which empowered the prison's board of trustees to pay prisoners from money received by the institution for the labor of prisoners. According to the court, the Fair Labor Standards Act did not convert the prisoner's status to that of "employee." The court noted that nothing in the legislative history of the Act supported a contrary result.

The difficulty in the instant case is, as mentioned earlier, that Woodall's allegations do not precisely define the relationship between Servomation and the IDOC. A more comprehensive picture of the arrangement among Servomation, the IDOC and Woodall is necessary in order for the Court to assess the economic reality of the situation and to determine whether Woodall may claim the benefits of the Fair Labor Standards Act. Accordingly, defendants Servomation and Fairman are given 45 days to file motions for summary judgment consistent with our discussion herein and supported by affidavits or other documents demonstrating the relationship among Servomation, the IDOC and Woo-

dall.[6] Defendants should also address (1) the question whether the IDOC is an "employer" within the meaning of the Fair Labor Standards Act, and (2) the applicability of the Illinois Minimum Wage Law, Ill.Rev.Stat. ch. 48, §§ 1001–1015 (1981).

### VIII. *Conclusion*

For the reasons set forth herein:

(1) Woodall's claim that he was placed in segregation without a prior hearing is dismissed with leave to file, within 60 days, an amended complaint naming the individuals responsible for the claimed deprivation.

(2) Partilla's motion to quash will be granted, and she is dismissed from this lawsuit.

(3) The motion to dismiss on behalf of the five Joliet defendants is granted in part, denied in part as follows:

(a) The motion to dismiss as to Tibbitts, Hampton, Green and Matuszeuski is granted as to all claims.

(b) The motion to dismiss as to Fairman is granted as to all claims except those based upon the Fair Labor Standards Act and the Illinois Minimum Wage Law. Fairman is given 45 days to file a motion for summary judgment as outlined in Section VI.

(4) Servomation, Inc.'s motion to dismiss is granted as to all claims except those based upon the Fair Labor Standards Act and the Illinois Minimum Wage Law. Servomation is given 45 days to file a motion for summary judgment as outlined in Section VI.

(5) The status date of March 2, 1984, is vacated and a status hearing is reset in open court for April 27, 1984, at 10:00 a.m.

It is so ordered.

---

**6.** It does not appear from the complaint that defendants Hampton, Green or Matuszeuski were personally involved in the circumstances giving rise to Woodall's labor claims. Accordingly, Hampton, Green and Matuszeuski are dismissed from this case with respect to the labor claims. *See Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982).