**Stephen Charles CHASE, Petitioner,**

**v.**

**John T. HADDEN, Warden, Federal Correctional Institution, Rudy Estrada, Captain, Chairman of IDC, and Randy Wells, Correctional Officer, Respondents.**

**No. 84–CV–1614.**

United States District Court,
N.D. New York.

June 24, 1985.

Stephen Charles Chase, pro se; David A. Lenihan, Assigned by Magistrate Ralph W. Smith, Jr. for Evidentiary Hearing, Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y., Albany, N.Y., for respondents; David R. Homer, Asst. U.S. Atty., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

The petitioner submitted pro se a detailed and lawyerlike form application for federal habeas corpus setting forth, with exhibits A to E, five grounds of alleged due process and equal protection violations that occurred in disciplinary proceedings against him at the Federal Correctional Institution, Ray Brook, New York. A substantial memorandum of law was submitted pro se in support of the application. Assistant United States Attorney David R. Homer, thereafter, filed in behalf of the respondents a motion, with attached exhibits A through D–2, to dismiss the petition/complaint, and/or the grant of summary judgment as a matter of law. Petitioner filed opposition pro se to that motion arguing there were several factual disputes, and requesting an evidentiary hearing. By Order dated February 4, 1985, Magistrate Ralph W. Smith, Jr., stating there were questions of material fact to be resolved, set an evidentiary hearing for March 12, 1985 at the Ray Brook Federal Correctional Institution. Magistrate Smith assigned Attorney David A. Lenihan to represent the petitioner at the evidentiary hearing. The hearing was held on March 19, 1985 and by a Report-Recommendation of nine pages, dated April 8, 1985, Magistrate Smith, based on findings therein, recommends that the respondents' motion for summary judgment be granted and the petition dismissed. On May 3, 1985, after grant of extension for filing, Attorney Lenihan filed eight pages of objections to the Magistrate's Report-Recommendation.

Magistrate Smith's report summarizes by name the testimony of the several witnesses, including the petitioner, who testified at the evidentiary hearing. The exhibits introduced and received at the hearing are contained in an envelope marked "Evidentiary Hearing (3/19/85) Exhibits." The exhibits are the same as the ones attached to the petitioner's application for habeas corpus and the government motion to dismiss or for summary judgment. In the main, the exhibits are documents and records related to the disciplinary proceedings involving the petitioner. My reference to the exhibits shall be to their markings at the evidentiary hearing. The Magistrate states in his report that the purpose of the evidentiary hearing was to explore petitioner's claim that he was denied the right to call witnesses at the Unit Discipline Committee (UDC) hearing and the Institution Discipline Committee (IDC) hearing.

The petitioner was charged in an Incident Report (Ex. A) with "Insolence Towards a Staff Member," who was respondent, Correctional Officer Wells, on March 28, 1984. The incident is described in the report and to summarize states that the petitioner came into Well's office, on March 28, 1984, when Wells was typing a memo, had an argument with him, used vulgar language and called him a liar in front of other inmates, and was causing a scene. This exhibit A also contains the initial investigative report of Lieutenant Stephen Loudermilk who investigated the incident on the same day. It is stated in his report that, after talking with petitioner Chase, Officer Wells and inmate Anthony Poulios, Lieutenant Loudermilk concludes that the written report of Officer Wells is true as written, thereby in effect refusing to accept the denial of petitioner Chase that he used vulgar language and at no time showed disrespect for Officer Wells. After this conclusion, the petitioner was placed in administrative detention and the matter referred to the Unit Discipline Committee (UDC) for further disposition. Then, the same Exhibit A reflects that on March 30, 1984, the UDC, after hearing the denial of

the petitioner, found and upheld the incident report as written, particularly the profane words, and referred the matter to the Institution Discipline Committee (IDC) recommending the withholding of Statutory Good Time (SGT) for a month. Defendant's Exhibit B is a Notice of Institution Discipline Committee (IDC) Hearing given to the inmate petitioner Chase, dated March 30, 1984, with a large X mark in the space, "I (do not) wish to call witnesses," and signed S. Chase. Exhibit C is the Institution Discipline Committee Report (IDC), dated April 4, 1984. In this Report, the petitioner's statement before the Committee is summarized, the finding is marked XX that the act was committed as charged, and the specific evidence for the finding is stated. The sanction was 7 days disciplinary segregation. Then followed the panoply of review to the Chief Executive Officer, the Regional Director, and the General Counsel. (Exs., Pl's Exs. 3, and 4—Report of the Chief Executive Officer not included in hearing exhibits, but marked Ex. D in habeas corpus application and government motion for dismissal or summary judgment.) The statement of facts and responses to the appeals by petitioner are detailed and lengthy in the standard forms. The appeals were denied at each level of administrative review.

The contention of the petitioner is that, in violation of due process and equal protection rights, he was denied the right to call witnesses when he so requested at both the UDC and IDC hearings. His assigned lawyer argues in the objections he filed to the Magistrate's Report-Recommendation that this denial prevented in some way important disclosure of the true fact that other inmates were not present on the scene at the time of the incident. Also, that the initial incident report of Officer Wells is untrue in the words that the vulgar statement of petitioner Chase "was said in front of other inmates and was causing a scene." It is contended in the objections that this is an exaggeration and untruth on the part of Officer Wells that should seriously impair the credibility of Officer Wells and the integrity of his written incident report. Oddly enough, this contention of denial of the right to call witnesses is made in the face of the express and puzzling position of petitioner that there were no other inmates on the scene at the time of the incident, except one inmate, Anthony Poulios. This is the same inmate Poulios, who was called as a witness by Lieutenant Loudermilk at the investigative stage, and as noted in the Lieutenant's report of March 28, 1984, stated, "that when inmate Chase came into the office and started to raise his voice to Officer Wells that he departed the area." Poulios went on to say that he knew that inmate Chase was mad and he did not want to get involved. (Ex. A) In an affidavit, Ex. E, dated August 14, 1984, before the decision of the General Counsel, dated September 21, 1984, and submitted in this habeas corpus proceeding, inmate Anthony Poulios gives further details of his recollection in the office, on March 28, 1984, when inmate Chase was speaking to Officer Wells about a disciplinary report Chase was receiving or about to receive. The affidavit states that it was made when inmate Chase asked inmate Poulios to give a truthful account of what he observed. This affidavit of Poulios emphasizes that there were no other inmates present in the immediate or proximate vicinity where Officer Wells and inmate Chase were talking.

 It is difficult for me to understand the contention of the petitioner that there was a denial of his right to call witnesses, when at the same time he insists there were no witnesses present, other than inmate Poulios. However, from my review of the record, there is no need to enter this area of uncertainty that in my judgment seems to approach gamesmanship. From my review, there is adequate support in the administrative records for the administrative determinations, that petitioner requested no named witnesses after being advised of his right to call witnesses. The General Counsel and the Regional Director Reports note that the petitioner requested an inmate witness at the IDC hearing and explains the reason for

upholding the refusal to call such witness. (See Pl. Exs. 3 and 4). The denial by the petitioner of the X marking in Exhibit B that he did not wish to call witnesses is not accredited in the administrative decisions or the Magistrate's Report. The word "correct" in Exhibit C, the Institution Discipline Committee Report, is typed after the statement that the inmate requested no witnesses. The summary of the testimony of the Committee members set forth in the Magistrate's Report is similar in this respect. It is obviously necessary in this prison setting that there has to be reasonable compliance with the listing of named witnesses on appropriate forms in order to insure orderly investigation, presentation, processing and determination of disciplinary charges. *See Wolfe v. Carlson,* 583 F.Supp. 977 (SDNY 1984). To request generally, if such request was made by petitioner, for witnesses unknown and unnamed to be sought out and produced, particularly when insisting none such existed, is not reasonable or acceptable compliance in my judgment with required procedures.

Magistrate Smith finds in his report that petitioner did not, in fact, ever specifically request that inmate Poulios be called as a witness but requested generally, at both the UDC and IDC hearings, that the witnesses to whom Officer Wells referred to in his incident report be produced. He further found that if Anthony Poulios had been called as a witness at the IDC hearing, the result would not have been different. (Mag.Rep.—Rec., pp. 7, 8). His conclusion is that the petitioner was properly advised of his right to call witnesses but was unable to do so because no witnesses, aside from Poulios, existed and as to him, it was properly concluded that his testimony would not have affected the outcome. Such findings and conclusions are accepted as supported satisfactorily by the record.

■ I do not have the same assurance from my review as the Magistrate that other inmates were not in the office area when the incident occurred. It seems most unlikely that at 12:05 P.M., in a prison setting with substantial number of inmates as at Ray Brook, there was not presence and movement of inmates in and around an office area. Again, however, as the Magistrate finds and as I approve, it would make no difference if there were only one or none. The essence of and gravamen of the charge is insolence to a staff officer, and it makes no difference if the insolence came from insulting and vulgar remarks in front of others, or from such type remarks whispered into the ear of the correction officer. The petitioner did admit at the IDC hearing that he told Officer Wells that he, Wells, had lied to him in the past. (Def.Ex. C). The demand of the petitioner to call all witnesses because the incident report refers to other inmates was unreasonable and would necessitate an extensive inquiry of some or all of the prison population in order to ascertain inmates who may have been in the area at that time and place. Most likely, few, if any, like inmate Poulios, would want to be involved if they were there.

Credibility was a prime factor to be weighed in the disciplinary proceedings involving petitioner Chase. Chase was interviewed at the investigative stage by Lieutenant Loudermilk, testified at the IDC hearing, and also testified at the evidentiary hearing held by Magistrate Smith. In each instance, his creditability was found wanting, and his denials were not accepted. Also, credibility evaluation permeated the relevant documents, and there is adequate support for the determinations that petitioner never requested a witness or witnesses in accord with prescribed procedures.

■ The landmark case establishing the right of an inmate involved in disciplinary proceedings is *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The right to call witnesses and present documentary evidence in defense is allowed to the inmate, but the right is circumscribed and not unrestricted. Particularly relevant to the situation here, it is stated that an unrestricted right to call witnesses carries obvious potential for disruption, and prison officials must have the

necessary discretion to keep the hearing within reasonable limits. *Id.* at 566–67, 94 S.Ct. at 2979–80. The circumscription was repeated in *Baxter v. Palmigiano,* 425 U.S. 308, 320–321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976); *see also Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Recently the *Wolff* and *Baxter* opinions and rulings were reviewed again by the United States Supreme Court in *Ponte v. Real,* —— U.S. ——, 105 S.Ct. 2193, 85 L.Ed.2d 553 (1985). The reasons for limiting the right to call witnesses under certain circumstances are explained again. As previously noted in the disciplinary proceedings here, justification is present in the administrative record to support the denial of a request for a witness or witnesses. The important ruling in *Ponte* is that the Due Process Clause of the Fourteenth Amendment does not require that prison officials' reasons for denying an inmate's witness request appear in the administrative record, but they may explain it "later" in a Court challenge on this ground. *Ponte* at ——, 105 S.Ct. at 2196. Last week the United States Supreme Court gave further guidance and definition of the rights afforded inmates by *Wolff v. McDonnell* in *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* —— U.S. ——, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The Court held that due process requires only that there be *some evidence* to support the findings made in inmate disciplinary hearings. (emphasis supplied).

Technically, in view of the evidentiary hearing held by the Magistrate in this habeas corpus proceeding, the grant of the summary judgment motion for the respondents may not be the proper procedural remedy. *See Blackledge v. Allison,* 431 U.S. 63, 80, 97 S.Ct. 1621, 1632, 52 L.Ed.2d 136 (1977). The objections filed by Attorney Lenihan are overruled. The findings and conclusions of the Magistrate are accepted and adopted as made. Judgment shall enter in favor of the respondents denying and dismissing the petition for the reasons stated herein, 28 U.S.C. § 636(b)(1)(C).

It is so Ordered.