**Dexter HUGHES, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 94–208.

Supreme Court of Iowa.

Dec. 20, 1995.

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

PER CURIAM.

The applicant, Dexter Hughes, appeals the district court's denial of his application for postconviction relief from prison disciplinary proceedings. At issue is the extent to which a prison investigator has a duty to obtain witness statements for inmates involved in prison disciplinary proceedings. Hughes contends the prison investigator has a duty to locate and obtain statements from witnesses whether or not the inmate actually knows the identity of the requested witnesses. We believe the prison investigator has no such duty. We affirm.

Hughes, an inmate at the Iowa State Penitentiary, was served with several disciplinary notices charging him with violating various prison rules following a visit to the prison hospital for treatment of a head wound. The notices charged him with a violation of prison rule 23 (disobeying a lawful order) and rule 27 (obstructive/disruptive behavior). On the day of the alleged infractions, Hughes was being transferred from his cell to the prison hospital. On the way, he demanded to speak to the shift captain, complaining his escorting guards had used unnecessary force. Hughes refused to leave the area and was physically escorted to the hospital. While in the hospital, Hughes refused to cooperate with medical authorities and was physically restrained. Medical treatment was terminated and Hughes, refusing to return to his cell, was physically escorted back and locked up.

Before the prison investigator, Ruben Baker, could visit Hughes, Hughes prepared a memorandum to Charlie Harper, the administrative law judge, requesting that all persons who knew about the incident in the hospital be witnesses and appear at the disciplinary hearing. Following Baker's visit with Hughes, Hughes gave him a copy of the memorandum and requested statements from the three officers who had escorted him to the hospital. The officers told Baker they had nothing more to add to their reports. Baker obtained statements from these officers.

The hearing was twice rescheduled in order to allow the parties to complete their investigation. At the disciplinary hearing, Hughes renewed his request for any witnesses who had knowledge of the incident. Hughes ultimately named the physician's assistant from the hospital, Miller, and Captain Foering as witnesses who could provide testimony regarding the alleged incidents.

Hughes argued the investigator did not conduct a sufficient investigation to discover other witnesses whose names were not known but who might have information regarding the alleged infractions. The disciplinary committee found Hughes violated both prison rules as charged and sentenced him to ten days disciplinary detention, loss of ninety days good conduct time, and ninety days restriction to maximum security. In its findings, the disciplinary committee specifically rejected Hughes' claim investigator Baker failed to adequately obtain witness statements. The committee concluded that because Hughes had failed to comply with prison investigation policies set forth in section II(C)(3) of the prison blue book, his requests for additional witnesses were untimely.

After exhaustion of his administrative remedies, Hughes appealed to the district court, claiming Baker refused to conduct an investigation and that he should have been granted a continuance to obtain witness statements. The district court rejected Hughes' arguments, noting Hughes had admitted knowing of the identities of physician's assistant Miller, Captain Foering, and Officer Anderson at the time he requested witness statements. The court further noted these three witnesses had also been named in the disciplinary notices received by Hughes. Hughes has appealed.

■ Proceedings for postconviction relief are special proceedings treated as an action at law. *Kelly v. Nix*, 329 N.W.2d 287, 291 (Iowa 1983). When there is an alleged denial of constitutional rights, however, we make our own evaluation of the totality of the circumstances in a de novo review. *McLaughlin v. State*, 533 N.W.2d 546, 547 (Iowa 1995).

Hughes contends his due process right to call witnesses in his defense was violated by the prison investigator's failure to conduct a search for witnesses who might have information regarding his claims. He specifically points out investigator Baker, because he had access to the disciplinary notices, was aware of the existence of Miller, Foering, and Anderson as witnesses. Since they were at the hospital at the time of the alleged incidents, Hughes maintains Baker had a duty to investigate them as potential witnesses and obtain any statements helpful to his defense. He also contends Baker had a duty to conduct at least a minimum investigation concerning other unknown witnesses who might have had knowledge of the alleged incidents. We find these contentions have no merit.

Germane to our examination of the prison investigator's duty is the language of section II(C)(3) of the prison blue book, which provides, in pertinent part:

3. Failure of the accused inmate to name witnesses to be interviewed by the investigating officer will result in no further opportunity for the investigating officer to take a statement from such witnesses unless the inmate can convince the Disciplinary Committee:

a. That the identity or existence of the witness was unknown prior to the inmate's interview with the investigating officer and

b. That substantial prejudice will result without witnesses being contacted for a statement.

Failure of the accused inmate to name witnesses to the investigating officer shall not affect the ability, if any, of the accused inmate to take statements from witnesses or his right to call witnesses at the hearing as provided in Section III(D)(7).

The landmark case establishing the rights of an inmate involved in a disciplinary proceeding and the duties of prison officials is *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See also James v. State*, 541 N.W.2d 864 (Iowa 1995). The Court in *Wolff* recognized that prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951. The *Wolff* Court, however, also recognized that a prisoner charged with violating a prison regulation which could result in the loss of "good time" credit is entitled to minimal due process protections. *Id.* at 566, 94 S.Ct. at 2979, 41 L.Ed.2d at 956. Chief among these protections is the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board. *Id.* The

inmate's right to present witnesses, however, is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553, 558 (1985). The *Wolff* Court ultimately ruled that the prisoner's right to call witnesses and present evidence in disciplinary proceedings could be denied if granting the request would be "unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566, 94 S.Ct. at 2979, 41 L.Ed.2d at 956. According to *Wolff,* "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.,* 94 S.Ct. at 2980, 41 L.Ed.2d at 957.

The Court in *Ponte* held the due process clause requires that prison officials at some point state their reasons for refusing to call witnesses requested by an inmate at a disciplinary hearing, but that such reasons or support for such reasons are not constitutionally required to be placed in writing or otherwise exist as part of the administrative record. 471 U.S. at 492–93, 105 S.Ct. at 2193–94, 85 L.Ed.2d at 556.

There appear to be few Iowa cases delineating the duties of prison investigators in obtaining witness statements on behalf of an inmate involved in a disciplinary proceeding. Several Iowa cases, however, have addressed the rights of inmates vis-a-vis prison officials when seeking to obtain witness statements. In *Gladson v. State,* 439 N.W.2d 214 (Iowa App.1989), the inmate was charged with four violations of prison rules based on his alleged involvement with other inmates in an escape plot. At the disciplinary hearing, Gladson requested a fellow inmate and a prison guard be called as witnesses. *Id.* at 215. Despite ambiguities in Gladson's request, the investigator obtained a statement from the fellow inmate which was submitted to the disciplinary committee. The committee refused the remainder of Gladson's request on two grounds: (1) the requests were not made until the time of hearing; and (2) to allow the

witnesses to testify would present a security problem to the institution. *Id.*

On appeal to the district court, Gladson argued he was denied due process when the investigator did not obtain witness statements from guards who might have been able to testify regarding his whereabouts at the time of the alleged escape attempt. *Id.* at 216. The district court rejected this argument, holding Gladson's request did not specify which officers he wanted to interview and it would be impossible two months after the incident for the officers to verify his whereabouts. *Id.* The court of appeals affirmed, ruling the failure to collect the statements was not a denial of Gladson's due process rights. *Id.*

In *Bradham v. State,* 476 N.W.2d 369 (Iowa App.1991), Bradham was charged with making a false statement. He requested the presence of three witnesses during the hearing. *Id.* at 373. The disciplinary committee accepted two of the statements, but rejected a third because that witness, Viers, had been transferred to a work-release facility. *Id.* The investigator had the telephone number to contact Viers but did not do so. *Id.* On appeal, Bradham maintained he should have been allowed to have all three of his witnesses testify in person before the committee. *Id.* The court of appeals ruled that although it did not agree that Bradham's due process rights were violated by the fact his witnesses were not allowed to testify in person, the investigating officer should have contacted Viers, and if the investigator believed Viers' testimony would not have added to the evidence, he should have provided a written statement giving the reasons for that decision. *Id.*

Federal jurisdictions have also attempted to set forth the duties of prison officials when faced with requests for witnesses from inmates. *See Chase v. Hadden,* 612 F.Supp. 183, 186 (N.D.N.Y.1985) (reasonable compliance with the listing of named witnesses in appropriate forms is required in order to insure orderly investigation, presentation, processing, and determination of disciplinary charges; general requests for witnesses unknown and unnamed were not reasonable); *Woodall v. Partilla,* 581 F.Supp. 1066, 1074

(N.D.Ill.1984) (no due process violation found where the inmate had failed to allege an investigation would have yielded witnesses whose testimony would have controverted the alleged violations); *Lathrop v. Brewer*, 340 F.Supp. 873, 882 (S.D.Iowa 1972) (investigator's failure to conduct an investigation rendered investigator's role as superfluous).

Several states have also addressed the issue. *See Gonzalez v. State*, 604 So.2d 874, 876 (Fla.Dist.Ct.App.1992) (where an inmate insisted he was aware of specific witnesses who could vouch for his innocence, further inquiry must be made to obtain statements from these witnesses); *Sims v. Dugger*, 519 So.2d 1080, 1081–82 (Fla.Dist.Ct.App.1988) (where an inmate provides the name of a specific witness to refute allegations of prison rule violations, the prison investigator has a duty to investigate that witness and provide a statement to the disciplinary committee why the requested testimony was not obtained or why the witness was not contacted); *Laureano v. Kuhlmann*, 75 N.Y.2d 141, 147–48, 550 N.E.2d 437, 440–41, 551 N.Y.S.2d 184, 187–88 (1990) (where a specific witness is requested by an inmate to testify at a disciplinary proceeding, a disciplinary determination cannot stand when a denial of the request is wholly unexplained).

■ Although other jurisdictions vary in their conclusions regarding the prison investigator's duty to obtain witness statements, all jurisdictions appear to agree the inmate must make a specific request to the investigator before the investigator is required to search for or obtain statements from witnesses. In the present case, the record reveals Hughes was aware that Miller, Foering, and Anderson were potential witnesses prior to his meeting with the investigator because he received a copy of the disciplinary notice containing those three names. Yet Hughes did not name Miller and Foering as potential witnesses until pressed by the disciplinary committee at the disciplinary hearing. Hughes also has failed to show that his failure to name those witnesses comes under the exceptions set forth in section II(C)(3) of the prison blue book. Finally, Hughes failed to allege at the postconviction hearing what the testimony of the witnesses would have been or how the anticipated testimony would have changed the results of the disciplinary proceedings.

■ We further conclude Hughes' request for other unnamed witnesses to appear at the disciplinary hearing was not sufficient to trigger a duty to investigate and take statements.

We note that Hughes relies on *Bradham* in support of his argument the prison investigator had a duty to obtain witness statements. We find that case factually distinguishable from the present case and conclude it is not controlling here.

We conclude the district court was correct in denying Hughes' application for postconviction relief.

**AFFIRMED.**