**William JACKSON, Plaintiff,**

v.

**Michael O'LEARY, et al., Defendants.**

**No. 88 C 5755.**

United States District Court,
N.D. Illinois, E.D.

July 25, 1988.

---

William Jackson, pro se.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William Jackson ("Jackson") asks leave to file this 42 U.S.C. § 1983 ("Section 1983") action without prepayment of the filing fee. Jackson's pro se Complaint alleges officials of the Stateville Correctional Center ("Stateville") reassigned him to a less desirable job in violation of his rights under the Eighth and Fourteenth Amendments.[1] Jackson seeks damages and declaratory relief.

Jackson worked as an "Audio Video Clerk"[2] in Stateville's Administration Building for 26 months at a salary of $45 a month. On March 24, 1988 Stateville officials summoned all residents assigned to the Administration Building and threatened them with removal from their jobs if an engraver missing from the Inventory Control Room was not returned by the next day. When no one returned the engraver, Jackson was reassigned to a job in D–Line

---

1. In conformity with uniform (though technically imprecise) usage, this opinion refers to the constitutional guaranty by direct reference to the underlying Bill of Rights provision (in this instance the Eighth Amendment), even though state actors such as defendants are subject only to the Fourteenth Amendment's mandate. This type of usage is a convenient way to identify just which Bill of Rights provision, incorporated via the Fourteenth Amendment (as to the Eighth Amendment, see *Harris v. Fleming*, 839 F.2d 1232, 1234 (7th Cir.1988)), is in issue.

2. This Court's guess is that the job label is more likely the more familiar "Audio Visual Clerk." But this opinion is of course bounded by Jackson's Complaint, so it will stick to his terminology (which makes no difference in any event).

at $15 a month. That job involves manual labor for such tasks as cutting grass, digging ditches and working on construction and demolition of buildings. Jackson contends the reassignment (1) violated his rights to due process and equal protection and (2) constituted cruel and unusual punishment.

■ As for the first set of those claims, Jackson points to his having been removed from his job assignment arbitrarily (as he would have it) and without various components of procedural and substantive due process: hearing, adequate prior notice or just reasons for removal. At the outset it must be recognized that a prison inmate has no constitutional right to prison employment as such (*Harris v. Greer*, 750 F.2d 617, 618 (7th Cir.1984); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir.1980); see *Harris v. McDonald*, 532 F.Supp. 36, 39 n. 4 (N.D. Ill.1982), *aff'd on other grounds*, 737 F.2d 662 (7th Cir.1984)). And because the Due Process Clause is not implicated unless a plaintiff shows both (1) the absence of the necessary procedural protection and (2) the deprivation of a protected interest, Jackson must invoke some state law or regulation that creates a protected liberty or property interest in a particular prison job (see *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir.1988)).

■ To that end, a law or regulation creates an entitlement interest requiring due process protection only if it uses language of an unmistakably mandatory character so as to impose a substantive limit on official discretion (see *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988)). Courts in this Circuit have held Illinois statutes and prior regulations governing prison work assignments do not meet that standard (*Mathews v.*

*Fairman*, 779 F.2d 409, 414 (7th Cir.1985); *Watts v. Morgan*, 572 F.Supp. 1385, 1388–91 (N.D.Ill.1983)). Although the regulations cited in those cases have since been superseded, the new regulations still do not create substantive limits on official discretion in inmate job assignments.

■ Jackson contends 20 Ill.Admin.Code § 420.40,[3] the regulation governing removal from work assignments, vests him with a protected liberty and property interest in his prison job. In relevant part Sections 420.20 through 420.40 read:

Section 420.20 Definitions

"Assignment Officer" means one or more persons designated by the Chief Administrative Officer to, among other matters, conduct reviews and make recommendations concerning institutional assignments, inter-institutional transfers, security classifications and program assignments.

Section 420.30 Assignment

(a) Assignments of committed persons to facilities shall be in accordance with 20 Ill.Adm.Code 503.

(b) The Assignment Officer shall, within 60 days following admissions for adults, or within 30 days following admission for juveniles, make a recommendation for the assignment of a committed person received at an assigned facility.

(c) Temporary assignments may be made by the Assignment Officer prior to review by the Chief Administrative Officer.

(d) A committed person may be given an opportunity to appear before and address the Assignment Officer whenever his case is being considered.

(e) Recommendations made by the Assignment Officer shall be in writing.

(f) All recommendations are subject to review and approval by the Chief Administrative Officer.

Section 420.40 Removal/Reassignment

---

**3.** Citations to that Code will simply take the form "Section——." Exhibit A to Jackson's Complaint is the 1985 version of Section 420.40, which was not in effect in March 1988 (when defendants removed him from his job). Effective July 1, 1987 Sections 420.20 ("Definitions"), 420.30 ("Assignment") and 420.40 ("Removal/Reassignment") had been amended by the Department of Corrections (see 11 Ill.Reg. 11497). This opinion quotes the correct versions (the amended ones).

(a) A committed person may be removed from his assignment and/or reassigned by the Chief Administrative Officer, or by the Assignment Officer with subsequent approval by the Chief Administrative Officer. Removal and/or reassignment shall be based upon matters including, but not limited to, the committed person's inability or incompetence in performing or completing the assignment, disciplinary reasons, the committed person's request for an assignment change, staff recommendation, security or administrative reasons.

Without question an inmate's *initial* job assignment under Section 420.30 (his "program assignment" in Section 420.20 terminology) is totally a matter of discretion—Section 420.30 cannot conceivably be stretched to create a liberty or property interest. And as for any notion of a vested right once the original assignment has been made, the language of Section 420.40 negates that possibility:

1. To be sure, the regulation's provision for removal or reassignment is phrased in terms of matters on which the change "shall be based" (the normal way in which mandatory conduct is expressed). But those matters are described as "including, but not limited to" enumerated items—the classic language of totally unrestricted (and hence totally discretionary) standards.

2. Even if the specifically enumerated items were viewed very differently—as somehow creating a list bounded by principles of ejusdem generis—they include two reasons that are totally unbounded in discretionary terms:

(a) "staff recommendations" and

(b) "administrative reasons."

In short, Jackson is simply wrong in labeling Section 420.40 as the source of a legally protected interest in his job.[4]

To phrase things differently, the regulation leaves the decision to remove an inmate from a work assignment to the unfettered discretion of prison officials.[5] It does not give Jackson any reason to expect he can keep a job assignment so long as he performs his work adequately and otherwise follows prison rules. While all this may seem unfair to Jackson, the regulation does not prohibit his removal from an assignment due to the misbehavior of an unidentified member of the group of which Jackson was a part. Thus defendants' decision to reassign Jackson to a different job is not subject to federal court audit under the Due Process Clause (see *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982)).

■ Jackson's equal protection claim is equally without merit. In the constitutional sense, a prison administrative decision violates equal protection only if the decision is a product of intentional or purposeful discrimination (*Meriwether v. Faulkner,* 821 F.2d 408, 415 n. 7 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987)). Jackson's Complaint alleges nothing from which such purposeful discrimination may even arguably be inferred.

■ Finally, Jackson seeks to premise his Eighth Amendment claim on the fact that his job on D–Line is more onerous than his former assignment as Audio Video Clerk. With the most limited exception, prison officials may compel inmates to perform reasonable work requirements without violating the inmates' constitutional rights (see *Mosby v. Mabry,* 697 F.2d 213, 215 (8th Cir.1982) (per curiam) (Thirteenth Amendment); *Bijeol v. Nelson,* 579 F.2d

---

**4.** This conclusion is wholly consistent with this Court's opinion in *Parker v. Lane,* 688 F.Supp. 353 (N.D.Ill.), where an Illinois prison inmate was found to have stated a cause of action for a due process violation in his having been moved from the Honor Dormitory to the prison's general population. In *Parker, id.* at 356 the state defendants "effectively conceded—by their silence—that the [prison's Assignment Committee] Manual does create a constitutionally protected liberty interest...." Accordingly this Court had to assume that proposition, without really deciding it (and without even examining the issue), and then go on to the other issues posed by the litigants. This opinion therefore writes on a clean slate.

**5.** There is no other way to read the unrestricted reference to "staff recommendation" as a predicate for removal or reassignment.

423, 424–25 (7th Cir.1978) (per curiam) (due process); *McDonnell v. United States Attorney General,* 420 F.Supp. 217, 221 (S.D. Ill.1976) (Eighth Amendment)). That exception, which implicates the Eighth Amendment's proscription against cruel and unusual punishment, is brought into play only when a prison official knowingly compels a prisoner to do work that causes undue pain, endangers the prisoner's life or health, or exceeds the prisoner's physical capacity (*Toombs v. Hicks,* 773 F.2d 995, 997 (8th Cir.1985) (per curiam); cf. *Jones v. Morris,* 777 F.2d 1277, 1280 (7th Cir.1985)). Jackson alleges no such hazardous work conditions. His preference for clerical rather than manual labor simply does not raise a colorable claim of cruel and unusual punishment.

### Conclusion

Because the Complaint fails to present an arguable claim for relief and is irremediably frivolous as a matter of law, *Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 758 (7th Cir.1988) dictates the result. This Court denies Jackson's motion for leave to file in forma pauperis and dismisses this action with prejudice pursuant to 28 U.S.C. § 1915(d).