998 F.2d 1017
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joe WOODS, also known as Larry Eason, Plaintiff/Appellee,
v.
Eugene VENEGONE, Assistant Warden of Programs, et al.,
Defendants/Appellants.
 No. 90-3071.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 9, 1993.*
Decided July 12, 1993.
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Joe Woods appeals from the district court's grant of summary judgment in favor of the defendants, various employees of the Illinois Department of Corrections. Upon reviewing the record as well as the parties' arguments on appeal, we agree with the district court's decision resolving Woods' due process and equal protection claims. We AFFIRM the court's decision for the reasons set forth on pages one through four of its Memorandum Opinion and Order, a copy of which is attached to this Order. We need not address Woods' claim that the defendants retaliated against him for filing lawsuits against them, for Woods has waived this claim by failing to raise it in his brief. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991).
 
 ATTACHMENT
 
 2
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 3
 JOSEPH WOODS, Plaintiff,
 
 
 4
 v.
 
 
 5
 EUGENE VENEGONE, et al., Defendants.
 
 Case No. 86 C 1450
 MEMORANDUM OPINION AND ORDER
 
 6
 ANN CLAIRE WILLIAMS, District Judge.
 
 
 7
 The relevant facts in this case are the same as in the court's September 8, 1988 opinion. On March 25, 1985, while an inmate at Stateville Correctional Center in Joliet, Illinois, Joseph Woods was performing his duties as a law clerk when he was stopped by a correctional officer and asked to show a pass permitting movement throughout the institution. After Mr. Woods complied, the officer suspected that the signatures on the pass were forgeries and charged Mr. Woods accordingly. On April 1, 1985, the Stateville Adjustment Committee found that Mr. Woods had committed forgery and sanctioned him by issuing a reprimand. After being informed of the Adjustment Committee's finding, the Unit E Assignment Committee terminated Mr. Woods' job as a law clerk in the prison library. Mr. Woods sued under 42 U.S.C. § 1983. He makes three claims in connection with the loss of his law clerk position: that it constituted a deprivation of liberty without due process, that he was denied equal protection, and that the defendants retaliated against him for exercising his right of access to the courts. Both sides move for summary judgment. The court grants the defendants' motion.
 
 
 8
 In order to claim the protections of the due process clause, Mr. Woods must demonstrate a liberty interest in his job. Such an interest can come from either of two sources: the due process clause itself or state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). Since prisoners have no constitutional right to prison employment, Harris v. Greer, 750 F.2d 617, 618 (7th Cir.1984), Mr. Woods must show that Illinois law creates such a right. Williams v. Faulkner, 837 F.2d 304, 309 (7th Cir.1988).
 
 
 9
 The language of the relevant regulations and prior cases foreclose this question. The regulation which governs removal from a prison job is 20 Ill.Admin.Code § 420.40:
 
 
 10
 (a) A committed person may be removed from his assignment and/or reassigned by the Chief Administrative Officer, or by the Assignment Officer with subsequent approval by the Chief Administrative Officer. Removal and/or reassignment shall be based upon matters including, but not limited to, the committed person's inability or incompetence in performing or completing the assignment, disciplinary reasons, the committed person's request for an assignment change, staff recommendation, security or administrative reasons.
 
 
 11
 The phrase "including, but not limited to" is quintessentially the language of discretion, and prison officials' discretion with respect to job assignments is the antithesis of what must exist for there to be a liberty interest. As the court in Jackson v. O'Leary, 689 F.Supp. 846, 848 (N.D.Ill.1988) (Shadur, J.) stated: "[A] law or regulation creates an entitlement interest requiring due process protection only if it uses language of an unmistakably mandatory character so as to impose a substantive limit on official discretion." See also, e.g., Culbert v. Young, 834 F.2d 624, 628 (7th Cir.1987). The discretionary language in the prison regulation quoted above negates the possibility of a liberty interest in Mr. Woods' law clerk position.
 
 
 12
 Mr. Woods claims that two different regulations cover his case. The first is 20 Ill.Admin.Code § 504.130(a)(1) which states: "Committed person in "A" grade shall receive all institutional privileges," and the second is 20 Ill.Admin.Code § 504.80(p)(2) which states: "The Director or the Chief Administrative Officer shall not increase, but may reduce, the sanctions imposed." Section 504.130(a)(1) does not apply here. As defendants point out, the "privilege" referred to can at most mean eligibility for a job, not assurance of getting any particular job, at least no such assurance in the face of the discretionary language in § 420.40 and the unequivocal case law in this Circuit. Section 504.80(p)(2) also does not apply. This section guides the proceedings of Stateville's Adjustment Committee, the committee which deals with inmate discipline. It has no effect on the workings of the Assignment Committee, the committee which doles out inmate jobs. That Mr. Woods, and perhaps most inmates, see the loss of a coveted job such as law clerk as punishment does not change the discretionary power to give and take away such jobs. See 20 Ill.Admin.Code § 420.40 and Jackson v. O'Leary, 689 F.Supp. at 848. Moreover, the regulations which cover disciplinary proceedings specifically provide that those proceedings will have no effect on prison officials' discretion with respect to jobs:
 
 
 13
 This Part shall in no way be construed to restrict or limit the Department's ability to administratively change a committed person's job, educational, program or housing assignment or to transfer the committed person to another facility.
 
 
 14
 20 Ill.Admin.Code § 504.80(k)(5). Mr. Woods had no liberty interest in retaining his job as a law clerk.
 
 
 15
 Mr. Woods' equal protection claim has no merit. Mr. Woods points to numerous examples of inmate law clerks who were found guilty or more serious offenses than Mr. Woods' forgery and unauthorized movement--offenses such as fighting and possession of drugs--yet these inmates did not lose their jobs. In order to justify the apparently unequal treatment of Mr. Woods as compared to these others, the defendants must articulate some rational relationship between their treatment of Mr. Woods and a legitimate penal interest. Williams v. Lane, 851 F.2d 867, 881 (7th Cir.1988). They have done so. Unlike all of the other examples that Mr. Woods cites to, Mr. Woods' forgery and unauthorized movement were directly related to his law clerk position. It was rational for the defendants to conclude that Mr. Woods had used and therefore abused his privileges as a law clerk to compromise Stateville's security concerns of strictly controlling inmate movement. It was also rational to take away that privilege so that he could not do so again.
 
 
 16
 While Mr. Woods' claim of retaliation could survive a motion to dismiss, Murphy v. Lane, 833 F.2d 106, 108 (7th Cir.1987), it cannot withstand a motion for summary judgment. Mr. Woods offers nothing beyond the coincidence of a prior lawsuit against the defendants filed six months earlier to support his claim of retaliation. This is too attenuated a connection in the face of the defendants' showing that Mr. Woods lost his law clerk job because he used it to forge a pass and compromise prison security.
 
 
 17
 The defendants' motion for summary judgment is granted.
 
 Dated: Aug 27, 1990
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record